MULLIN BUILDING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9813.    Promulgated September 16, 1947.

*Albert W. James, Esq.*, for the petitioner.
*E. L. Corbin, Esq.*, for the respondent.

352

## OPINION.

HILL, *Judge*: The present case presents the question of whether a given security constitutes an indebtedness or a stock interest. The considerations on which the courts rely in determining whether a particular security represents a stock or a debt have been often stated and are now familiar. The result of these considerations in a given case is determined upon the facts and circumstances of the particular case. We have carefully weighed and considered the facts and circumstances relating to the securities here in question and have concluded that they must be considered for tax purposes as representing stock rather than an indebtedness.

An indebtedness characteristically has a fixed maturity date, at which time a sum certain becomes due and payable. There is no fixed date of maturity of the principal of the debenture preferred stock here. The provision in the certificate thereof that upon liquidation this stock shall have priority in payment over the common stock adds nothing to

the usual provision in that regard as between preferred and common stock. In our opinion, that provision lends no support to the contention that the stock in question represents an obligation of debt rather than merely a preferred stock obligation. The original rights of a preferred stockholder entitle him, upon liquidation of the corporation, to recover the par value of the stock plus accrued unpaid dividends prior to distribution of liquidating or other dividends to holders of common stock. Such priority is not enlarged or fortified by a specific contractual provision giving the right to sue for its enforcement. This priority is protected by appropriate legal remedy without a contractual provision therefor. Upon liquidation, the right to receive payment of the par value of the debenture preferred stock in preference to the common stock rights arises or matures, but such maturity is not dependent upon the specific provision of the contract purporting to give the right to sue therefor. The event of liquidation fixing maturity of the debenture preferred stock here, with rights of priority only over the common stock, is not the kind of activating contingency requisite to characterize such stock as incipiently an obligation of debt.

The articles of incorporation provide that, if interest on the debentures is not paid for a two-year period, or par value plus accrued interest is not paid on liquidation, the debenture holders shall be entitled "to immediate rights of action to recover the said interest on and/or the said par value of their respective holdings * * *."

The recital on the back of the certificate purporting to summarize this provision in the corporate charter is as follows:

3. Upon the failure of the Company to pay the interest on any of its outstanding Debenture Preferred Stock for 2 years, or to pay the par value thereof upon liquidation or dissolution of the Company, the holder of said stock shall have a right of action against the Company to recover the same.

The above quotation from the back of the certificate indicates the interpretation of the charter provisions by petitioner and the certificate holder to be that only upon dissolution of petitioner will the debenture holder be entitled to receive payment of the principal of the debenture. It is, therefore, our opinion that this provision means and was intended to mean that a debenture holder can recover only interest when interest is in default for two years and can recover interest and par value only on failure to pay at liquidation.

This interpretation is supported, we think, by consideration of the whole structural set-up of the two family corporations and by one of the avowed purposes thereof, namely, to assure a steady and safe income to the stockholders. The source of such assured income is rentals from the building, paid in the main by the sales company. The latter must pay rental to petitioner in the amount of $30,000 a year or 8 per cent of its net sales, whichever is the larger. A substan-

tial amount of additional rentals for space in its building was also received by petitioner through other tenants.

If the debenture stockholders are entitled to enforce payment of the par value of their debenture stock upon default in the interest payment on such stock and should do so, petitioner's only income-producing asset and, in fact, its only asset, the land with the building thereon, would either have to be liquidated or encumbered to raise the $290,000 plus accrued interest required for such payment. If the income-producing asset should be liquidated, the flow of the "steady and safe" income therefrom would cease; or, if the income-producing asset should be mortgaged to secure funds for such payment, petitioner would pay out a large part of its earnings in interest and for retirement of principal to its mortgage creditor instead of to its debenture and common stockholders. Such a course would be too irrational from a business viewpoint to merit even momentary contemplation. Also, it would defeat the avowed purpose of securing a steady and safe income to the debenture holders. Such a course would furnish an apt illustration of killing or irreparably debilitating the goose that lays the golden eggs. If the debenture holders should take such course to recover their debenture stock investment, it would not only be of no financial benefit to them, but would entail a financial loss and detriment to themselves as holders of the common stock. Such a course is not within the realm of sane business practice and we are convinced that it was not intended.

Our observations just preceding have equal application in support of our finding of fact that it was intended that the 5 per cent per annum payment on the debenture stock should be paid out of earnings. The fact that it was so paid is categorically established by the evidence. But since, in our opinion, it was the intention of petitioner and the debenture holders that the default could only be made good out of earnings, the suit would be unavailing unless there should be earnings out of which to pay. Hence, the result of such suit would be only to force the distribution of sufficient earnings to cover the default or else the issuance of a mandate to petitioner to pay the defaulted amounts to the extent earnings should be available therefor.

What is it, under petitioner's contention, that matures the obligation for collection? Is it the default, or does such maturity arise only if or when suit is brought? Regardless of what is the correct answer to this question, the debenture stockholders, who are also the holders of the common stock and are the directors and officers in control of petitioner, as well as the holders of all of the stock of the sales company and, as its directors and officers, are in control of the latter, are the persons who may determine when or if the right to bring suit shall be exercised. However, it does not stand to reason

that under the circumstances of this case the debenture holders will ever bring such suit or that it was at any time intended that they might do so.

In the event of liquidation the par value of the debenture stock becomes payable out of the corporate assets, with priority over the common stock. No suit is necessary to mature the corporate obligation to pay. This is true in respect either of preferred stock or debt. If the debenture stock be deemed an evidence of debt instead of preferréd stock, certainly a suit should not be necessary to constitute it a basis for creditor's claim payable out of the corporate assets. So, the provision purportedly giving the right of action to a debenture holder in the event of liquidation is an idle gesture, regardless of whether the debenture be deemed to constitute a proprietary or a creditor right.

The provision for right to bring suit, rather than granting a right, in reality constitutes, if anything, a limitation of a right. Any creditor can bring suit on a debt or for the performance of a legal obligation immediately upon default thereof unless it is specifically provided otherwise by contract, but the debenture holders here could only do so after a two-year default in interest or on liquidation. Thus, the provision for bringing suit which is relied on as fixing a maturity date of an obligation in reality has no effect in doing so, but, on the contrary, limits rights which the debenture holders would have otherwise had as holders of preferred stock. Furthermore, since there is no lien that can be foreclosed, and as hereinafter indicated the general creditors might well have priority over the debenture holders, and since there is no restriction on petitioner placing encumbrances on its assets, this limited right to sue is of questionable value in any event. The most that can be said of the debenture holders' claims to the assets is that they were prior to the common stockholders, but since, in the close family situation involved here the debenture holders and the common stockholders were the same people, even this preference is more apparent than real.

Petitioner points to the provision that the debenture stock "shall not participate in or receive any earnings, profits or dividends." This, petitioner contends, strongly indicates that the debentures represented an indebtedness rather than a proprietary interest. This provision to us is merely a matter of nomenclature. It merely says that the debenture holders' receipts will be called interest and will not be called dividends or considered as a receipt of earnings as such. Actually, the only income-producing asset petitioner had was its building. It would therefore seem that the so-called interest would of necessity have to be paid from rental of the building, or, in other words, from

earnings. Under these circumstances, to provide in effect that the payments to the debenture holders will not be called dividends or considered as receipts of earnings is little more than labeling and is not persuasive as to the fundamental nature of the securities in question. The provision in question does not prohibit or in any way limit the payment out of earnings. Hence, the provision that the debenture holder shall not participate in or recover any earnings, profits, or dividends means merely that the 5 per cent payment on the debentures, even though paid out of earnings, shall not be called a distribution of dividend.

Whether or not the debenture holder is entitled to recover principal only on liquidation, the amount of recovery is subject to the hazards of the corporate business, since the debenture stock is unsecured and is not superior, but is possibly subordinate, to general creditors' claims. Since the debenture preferred stock was carried on its books and was held out to the public by petitioner as representing capital, it appears that general creditors would have substantial basis for claiming priority of their claims over those of the debenture holders. Certainly, there can be no question as to the priority of the secured creditor's claim over that of the debenture holder. In this respect, i. e., the debentures' lack of priority or security, the instant case differs essentially from *Helvering* v. *Richmond F. & R. R. Co.*, 90 Fed. (2d) 971, affirming 33 B. T. A. 895. In the *Richmond* case, the principal of the guaranteed stock was not demandable by the stockholder in the absence of default in the payment of the guaranteed dividends. The Circuit Court said:

* * * There is nothing in the fact that the debt evidenced by the preferred stock is not payable at a fixed time which throws upon the holders thereof any of the risks with respect to the corporate enterprise which are characteristic of the position of the stockholder.

However, the essential fact in that case which distinguishes it from the instant case was that the guaranteed stock was secured and had priority not only over general creditors, but also over other secured creditors. The Circuit Court in the *Richmond* case stressed this, saying:

In the case at bar, not only does the guaranteed stock rank prior to the interest of general creditors, but also prior to the interest of other secured creditors. The so-called guaranteed dividends are debts to be paid when due, whether there are net earnings out of which they may be paid or not; and, if there be default in paying them as guaranteed, the lien on the assets can be foreclosed and the principal as well as the guaranteed dividends paid from the proceeds, in advance of all other creditors. * * * Thus the principal of this secured stock not only is not risked upon the enterprise along with the investment of other stockholders, but it is given a preferential lien upon the assets over the claims of all other creditors, secured as well as unsecured.

Furthermore, the intention of the parties indicates that the debenture stock was stock rather than a debt. It was called stock. It was carried on petitioner's books as capital and so represented to the business world. Had it not been so represented, petitioner would have appeared as a company with a ratio of debt to capital of 29 to 1. Also, the transaction lacks the elements of a loan. New capital was not wanted or obtained by the issuance of the debentures. The absence of a true borrowing element we recognize is not always determinative, see *Cleveland Adolph Mayer Realty Corporation*, 6 T. C. 730; reversed on another point, 160 Fed. (2d) 1012, but such absence under certain circumstances is considered as indicating the creation of a stock interest rather than a debt. In *Golden Belt Lumber Co.*, 1 T. C. 741, we said:

* * * In the first place the new debenture preferred shares were issued in exchange, share for share, for old preferred shares and no new capital was paid into or lent to the company. The new shares thus evidenced an investment in the company rather than a loan to the company.

Petitioner claims that the purpose of the transaction was to satisfy James Mullin's desire to establish a steady income for his family and improve the sales company's credit position. The creation of petitioner accomplished these purposes just as fully by treating the debenture stock as an investment creating a proprietary interest as by treating it as an evidence of debt. It must be obvious that as a practical matter it was intended that the so-called interest should be paid only out of earnings, just as dividends would be paid on the debenture stock if it should be treated merely as preferred stock. It was not necessary to create a 29 to 1 debt to capital ratio in petitioner's financial structure to accomplish these ends. The sales company formerly owned the building and therefore had had no rental deduction. After the creation of petitioner the sales company rented the building and got a deduction therefor. To petitioner this rental was income, but, by virtue of its relatively large claimed debt to its debenture holders, a large portion of this rental income was offset by deduction for interest payments. This accomplishment is a matter of potent and pertinent consideration here and militates against the reality of the claimed debt creation.

We have concluded and hold that the debenture stock here involved is in fact stock and does not represent a debt. Accordingly, the payment thereon as interest was distribution of a dividend and the deduction therefor is disallowable.

Reviewed by the Court.

*Decision will be entered for the respondent.*

TURNER, *J.*, dissents.