## MATHER & CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9432.

United States Court of Appeals Third Circuit.

Argued Oct. 7, 1948.

Decided Jan. 3, 1949.

---

Frederick H. Spotts, of Philadelphia, Pa. (Thomas Stokes, of Philadelphia, Pa., William E. Koken, of Washington, D. C., and Pepper, Bodine & Stokes, of Philadelphia, Pa., on the brief), for petitioner.

S. Walter Shine, of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson and Lee A. Jackson, Sp. Assts. to Atty. Gen., on the brief) for respondent.

Before MARIS, McLAUGHLIN, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

The instant appeal raises the question of the propriety of a deduction for losses claimed by petitioner to have been incurred in the separate sales of two pieces of realty. We agree with the conclusion of the Tax Court that, under the applicable statutory provisions, the basis of petitioner, in computing its gain or loss on the sales, was "the same as that of the property in the hands of" the transferor to petitioner.[1]

Charles Mather founded in 1887 an insurance firm. As of October 29, 1926, there were four partners: Charles and three children named Victor, Gilbert, and Josephine. According to their partnership agreement, "the only contribution to Capital Account made by " the four was the $150,000 invest-

---

[1] The decision of the Tax Court is reported at, 1946, 7 T.C. 1440.

ed in their Walnut Street, Philadelphia, premises, to which total they had given as follows: Charles, $52,500 (35%); Victor, $37,500 (25%); Gilbert, $30,000 (20%); and Josephine, $30,000 (20%). The net earnings of the partnership were to be divided in the same percentages. This agreement also contained a number of provisions designed to keep the business a family enterprise.

On October 29, 1946, the four partners signed an agreement which called for incorporation of the firm, with a capital stock of $510,000, of which $500,000 was 6% cumulative preferred stock, par value $100 per share, and $10,000 was voting common stock, par value $10 per share. All partnership assets and good will, save those of its New York office, were transferred to the corporation.

The issuance of shares in the corporation took the following form:

(1) In tangible assets the partnership had $1,484,978.78, of which $1,299,978.78 were "current assets" (cash, notes and accounts receivable, and bank stock), $150,000 was the declared value of the partnership real estate, and $35,000 was the declared value of the furniture and fixtures; and the accounts payable of the partnership, which petitioner assumed, totalled $1,299,-978.78 (identical with the "current assets"). The $185,000 excess of partnership assets over partnership liabilities was represented by 1850 shares of preferred stock, of which Charles was given 648 shares (35.03%), Victor 462 (24.97%), Gilbert 370 (20%), and Josephine 370 (20%).

(2) Charles, as authorized by the October 29 agreement, conveyed premises at Arch Street, premises at Chestnut Street—both of which were separately owned by him—and gave petitioner a $50,000 promissory note in exchange for the remaining 3150 shares of preferred stock. The Arch Street property at that time had a fair market value of $350,000, and was encumbered by a mortgage of $150,000; the Chestnut Street property, then having a fair market value of $115,000, was encumbered by a mortgage

of $50,000. Consequently, it may be seen that Charles conveyed two pieces of realty worth $265,000 more than the mortgages to which they were subject, plus giving a $50,-000 note, or the equivalent of $315,000 for the 3150 preferred shares.[2]

(3) The common stock was issued in exchange for the good will of the going business. Charles, Victor, and Gilbert were each given 250 shares; Josephine, 50, of which 3 were initially issued to three other individuals for the purpose of qualifying them as directors; and the remaining 200 shares became treasury stock. The common stock then had an agreed value of $50 per share.

Petitioner claimed and was allowed depreciation deductions on the buildings on the Arch Street and Chestnut Street properties—which buildings were worth $60,000 and $30,000, respectively, at the time of incorporation—until they were demolished in 1934 and 1936 respectively.

The Arch Street premises were sold for $20,000 on December 31, 1942, and the Chestnut Street property for $2500 on December 30, 1943. The bona fide nature of these sales is not questioned. Asserting that its cost basis of these properties was $290,000 ($350,000 minus $60,000) and $85,-000 ($115,000 minus $30,000) respectively, petitioner claimed a loss of $270,000 on its 1942 income tax return, plus its expenses of sale, and a loss of $82,500 on its 1943 income tax return, plus its expenses of sale. Respondent, on the other hand, successfully maintained in the Tax Court the theory that the incorporation of the partnership was a tax-free exchange, so that petitioner's cost basis on the Arch and Chestnut Street properties was the cost of these properties to Charles Mather.

Was the 1926 transaction a tax-free exchange?

■ Section 203(b) (4) of the Revenue Act of 1926, 26 U.S.C.A. Internal Revenue Acts 1924 to Date, page 149, reads as follows:

"No gain or loss shall be recognized if property is transferred to a corporation by

2 In his individual income tax return for 1926, Charles reported a gain of $39,-300 upon the transfer of the Arch Street, and a gain of $25,400 upon the transfer of the Chestnut Street premises.

one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange."

This provision, a reenactment of Section 203(b) (4) of the Revenue Act of 1924, 43 Stat. 256, had been preceded by Section 202 (c) (3) of the Revenue Act of 1921, 42 Stat. 230, which was interpreted in Labrot v. Burnet, 1932, 61 App.D.C. 47, 57 F.2d 413. The legislative history of this provision indicates that its purpose was to establish "new rules for those exchanges or 'trades' in which, although a technical 'gain' may be realized under the present law, the taxpayer actually realizes no cash profit." Halliburton v. Commissioner, 9 Cir., 1935, 78 F. 2d 265, 269. With this background, we proceed to the initial question whether or not the exchange effectuated in accordance with the agreement of October 29, 1926, was tax-free within the meaning of Section 203(b) (4) of the Revenue Act of 1926, without reference to amendments thereto which we shall consider hereinafter.

The parties agree that the answer to this question depends upon whether "the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange," all other requirements of the section being here present. Summarizing the facts stated above, in the form of a table, we find the exchange to have had the following result:

Petitioner asserts that the proper method for calculating each partner's proportionate interest in the property is to divide the gain or loss each was occasioned by the net value each transferred. Under this theory, Josephine suffered a 12.2% loss and Gilbert a 10% gain, or a spread of 22.2%.[3] This they contend is not "substantially in proportion" to their interests prior to the exchange. Respondent, on the other hand, urges that the statute requires that the proportionate interest transferred by each be compared with the proportionate interest each received. Using this system, we note that Josephine suffered a 1.02% loss and Gilbert a 0.84% gain, or a spread of 1.86%.[4]

Each approach can cite respectable authority in its favor. After careful consideration, we are of the opinion that the position of respondent, which is in conformance with that indicated in Hartford-Empire Co. v. Commissioner, 2 Cir., 1943, 137 F.2d 540, 542, certiorari denied 1943, 320 U.S. 787, 64 S.Ct. 196, 88 L.Ed. 473, and Budd International Corp. v. Commissioner, 3 Cir., 1944, 143 F.2d 784, 791, certiorari denied, 1945, 323 U.S. 802, 65 S.Ct. 562, 89 L.Ed. 640, is correct. Our conclusion is based upon three cogent factors:

(1) The purpose of the statutory provision demonstrably being to eliminate the incidence of taxation from transactions contemplating and effectuating only technical gains and losses, we think the facts at bar clearly call for such a result. We note that, although Charles did report gain from the sale of the Arch Street and Chestnut Street properties on his 1926 individual income tax return, neither he nor Josephine claimed deductions for the losses suffered, nor

| | Net Value Transferred | Net Value Received | Gain | Loss |
|---|---|---|---|---|
| Charles Mather ............... | $393,750 | $392,300 | | $1450 |
| Victor Mather ................ | 56,250 | 58,700 | $2450 | |
| Gilbert Mather ................ | 45,000 | 49,500 | 4500 | |
| Josephine Mather ............. | 45,000 | 39,500 | | 5500 |
| | 540,000 | 540,000 | 6950 | 6950 |

---

[3] Charles would have had a 0.3% loss, and Victor a 4.4% gain, if the computation of petitioner be adopted.

[4] Charles would have had a 0.27% loss, and Victor a 0.45% gain, if the analysis of respondent be accepted.

did Victor or Gilbert report their gains from transfer of the *partnership* assets to the corporation. That any "profit" or "loss" could even be asserted here was a consequence only of capitalization of good will, and an apparently arbitrary apportionment of its value among the partners,[5] since the preferred stock, representing all the tangible assets of the enterprise, was issued almost exactly in accordance with the capital contribution of each of the partners.

(2) The statutory provision requires that the interest acquired by each person be in substantial "*proportion* to his interest in the *property* prior to the exchange." (Emphasis supplied.) The interpretation advanced by petitioner gives recognition to neither of the italicized words. "Property" here can mean only $540,000. The interest of Josephine in the $540,000 before incorporation was $45,000, or 8.33%; after $39,-500, or 7.31%. Her proportionate ownership interest, like that of the other partners, remained substantially the same. Petitioner would have us interpret the statute as if it read, "* * * if the stock and securities received by each are of substantially the same *value or amount* as the *value or amount* of his interest prior to the exchange, except only that the value of each person's interest be increased (or decreased) in similar proportion." Such construction of the provision seems to us unwarranted.

Moreover, the obvious intent of the statute would be defeated, for example, if, as is not uncommon, but a single share or two representing an infinitesimal fraction of the total issue was given a person who contrib-

uted nothing; for the infinite ratio of gain to that person, as compared with the other transferees, under petitioner's theory, would then prevent application of the statute. We are unwilling to invoke an interpretation to a statute which induces such a result, particularly when a reasonable construction not only gives full meaning to every word employed by the legislature but also effectuates the clear intent.[6]

(3) As we stated previously, Section 203 (b) (4) of the Revenue Act of 1926 was but a rewording of Section 202(c) (3) of the Revenue Act of 1921. It seems indisputable to us that the earlier provision, the pertinent portion of which read "* * * and the amounts of stock, securities, or both, received by such persons are in substantially the same proportion as their interests in the property before such transfer," forecloses any possibility that the so-called "relative value" test of petitioner be applied.

■ Accordingly, we hold that, since the proportionate interest of each of the partners was substantially the same after incorporation as before, the transfers were tax-free under the provisions of Section 203(b) (4) of the Revenue Act of 1926.

For another equally compelling reason, petitioner's appeal must fail. Even if it were to be assumed arguendo that the incorporation of petitioner did not meet the requirements of Section 203(b) (4) of the Revenue Act of 1926, petitioner is confronted with an amendment to that section effected by the Revenue Act of 1939, 53 Stat. 872. The amendment added two sentences to Section 203(b) (4),[7] only the first of which

---

[5] The January 2, 1925, partnership agreement of the four partners here involved recites that "the relation among the partners hereto is personal and is not based upon any interest, either in good will or capital assets in any way whatsoever, except to the extent of the contribution made by each as set forth in this paragraph [i. e., $52,500, $37,500, $30,000, and $30,000]." A former partnership agreement, executed January 2, 1923, includes this statement: "It is further agreed that * * * there is no goodwill because of the personal nature of the service rendered by the members of the firm to clients."

[6] We are not unmindful of Bodell v.

Commissioner, 1 Cir., 1946, 154 F.2d 407. We note that the Tax Court in that case applied the same interpretation as we here espouse, and that, as the opinion of the circuit court of appeals states, the proportionate interest approach *would have required the same result.* The decision in Bodell was in favor of the Commissioner. Certiorari was not requested.

[7] As thus amended, the provision is now Section 112(b) (5) of the Internal Revenue Code, 26 U.S.C.A. § 112 (b) (5). The identical wording eliminates the necessity for determining which of the two provisions—§ 112 (b) (5) or the 1939 amendment—here governs decision.

is here pertinent: "Where the transferee assumes a liability of a transferor, or where the property of a transferor is transferred subject to a liability, then for the purpose *only* of determining whether the amount of stock or securities received by each of the transferors is in the proportion required by this paragraph, the amount of such liability (if under Section 213 of the Revenue Act of 1939 it is not considered as 'other property or money') shall be considered as stock or securities received by such transferor." (Emphasis supplied.) Petitioner did assume the partnership debts and the mortgages on the Arch and Chestnut Street properties, simultaneously with receiving the partnership assets. If the debts are considered either as stock and securities or as other property or money received by petitioner, then the summary of the transaction would be:

Date. The amendment was designed to alter the rule of United States v. Hendler, 1938, 303 U.S. 564, 58 S.Ct. 655, 82 L.Ed. 1018, which had held that assumption of liabilities by a party to a corporate merger, being the equivalent of receiving other property or money, required the consideration of such assumption in determining what gain resulted from the transaction. Petitioner argues that, since (under its relative value approach) the 1926 transaction was not tax free, Section 213 is inapplicable. We have already stated our reasons for rejecting the relative value test upon which petitioner must rely to found this further argument. Even if we were to pass over that obstacle, however, we cannot agree with the analysis of the amendment which petitioner here urges.

The statutory provisions here involved are indeed complex. Their purpose, how-

| | Value Transferred | Value Received | Gain | Loss | Percentage of Gain or Loss to Property Transferred |
|---|---|---|---|---|---|
| Charles ..... | $1,048,742.57 | $1,047,292.57 | | $1450 | —0.001% |
| Victor ...... | 381,244.70 | 383,694.70 | $2450 | | +0.642% |
| Gilbert ..... | 304,995.76 | 309,495.76 | 4500 | | +1.475% |
| Josephine ... | 304,995.75 | 299,495.75 | | 5500 | —1.803% |
| | 2,039,978.78 | 2,039,978.78 | 6950 | 6950 | |

Thus, even if the "relative values" test were applied, the consequent 1.47% gain to Gilbert and 1.8% loss by Josephine would not (as petitioner concedes) be so great a spread as to be not substantially in proportion.

Petitioner asserts, however, that the 1939 amendment is inapplicable for the reason that it permits treatment of a liability as "stock or securities" only if the liability is not considered as "other property or money" under Section 213 of the Revenue Act of 1939; and, says petitioner, "that is not this case."

■ Section 213 of the Revenue Act of 1939 is set out on pages 1175–1179 of 26 U.S.C.A. Internal Revenue Acts, 1924 to

ever, is crystal clear. The decision in the Hendler case had announced that certain business reorganizations, bona fide in nature and not directed towards tax avoidance, were taxable because assumed liabilities were "other property or money." Congress promptly reasserted its desire to remove such reorganizations from tax recognition;[8] but while thus directing that such assumption or acquisition shall not be considered as "other property or money" and shall not prevent the exchange from being tax-free, Congress recognized that, as to the provision of the law relating to the requirement of substantially proportionate interests, the assumption of liability should be considered, and therefore provided that, for

---

[8] See Section 213(a), Revenue Act of 1939, 26 U.S.C.A. Internal Revenue Acts to Date, pages 1175–1176.

this *purpose only*, assumed liabilities were to be considered as stock or securities received.[9] Only by according such interpretation to the 1939 amendment can the intent of Congress to extend the field of tax immunity to transactions producing merely technical gains and losses receive due recognition.

The set of facts sub judice, we might add, seems to us a particularly good example of why the 1939 amendment ought not to be construed narrowly to accomplish merely an elimination of the Hendler principle; for, if the contention of petitioner were to prevail, in a transaction involving more than two million dollars, all four partners, whose financial interests had been accurately reflected in the issuance of preferred stock representing all tangible assets and 98% of the total capitalization of the enterprise, would have had to report gains or losses purely because $6950 in common stock was distributed on some basis other than financial contribution. Such reorganizations would be subject to a truly tortuous path if, to preserve the tax-free status granted by Congress, they had to approach exactitude toward minuscule individual holdings. We should be reluctant so to fetter discretion.

Finally, petitioner seeks to avail itself of Section 204(a) (8) of the Revenue Act of 1926, 26 U.S.C.A. § 113(a) (8), on the ground that Charles Mather reported gain from the sale of the Arch and Chestnut Street premises to petitioner. The provision, however, permits addition of the amount of gain to the basis of petitioner only if the gain was recognized by the law. As outlined above, we agree with respondent that the transaction was one in which the law recognized neither gain nor loss. We are in sympathy with the position of one who, in attempting compliance with elaborately worded and abstruse statutory provisions, erroneously reports gain on a tax-free transaction, particularly when his action receives apparent endorsement by the taxing authorities over a period of years. Any right he may have to a refund, however, is not before us on this appeal, and we cannot permit that individual right to in-

duce us to announce an improper interpretation of the statute and thereby compound the error.

For the reasons stated, the decision of the Tax Court will be affirmed.

---

9 See Section 213(c), Revenue Act of 1939, 26 U.S.C.A.Internal Revenue Acts to Date, page 1176.