GEORGE M. HOLSTEIN, III, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 46608–46613.   Filed February 24, 1955.

*Henry C. Diehl, Esq.*, for the petitioners.
*Charles Chase, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* The petitioners are transferees of La Habra Orange Mesa, a California corporation. The income tax deficiencies in controversy were determined against the corporation in the amounts of $2,211.60 for the year 1949 and $1,484.56 for the period January 1, 1950, to April 28, 1950. Petitioners do not contest their liability as transferees; the correctness of the deficiencies against the corporation only is involved. The facts have been completely stipulated in two stipulations which are hereby adopted as our findings.

La Habra Orange Mesa was incorporated on February 2, 1949, and authorized to issue 75,000 shares of non-voting preferred stock and 25,000 shares of voting common stock, all of the par value of $1 per

---

[1] Proceedings of the following petitioners are consolidated herewith: George M. Holstein, Docket No. 46609; Charles F. Langdon, Docket No. 46610; Frank B. Keelan, Docket No. 46611; William S. Holstein, Docket No. 46612, and Ruth H. Burrell, Executrix, Estate of Howard Burrell, Deceased, Docket No. 46613.

share. On March 10, 1949, it issued 16,500 shares of preferred stock and 210 shares of common stock to Charles F. Langdon in exchange for real property of the fair market value of $16,710. Charles F. Langdon and Frank B. Keelan were equal owners of that property and half of the common and preferred shares so issued were held by Langdon for Keelan. The basis of that property to Langdon and Keelan was $683.96. On the same day, and as part of the same plan, the corporation issued 105 shares of common stock to Howard Burrell and 105 shares of common stock to George M. Holstein for cash at $1 per share. No other shares were ever issued.

Thereafter, and up to the date of dissolution, April 28, 1950, the corporation sold the real property in various parcels. In its Federal income tax returns for 1949 and the period January 1, 1950, to April 28, 1950, the corporation used a cost basis of $16,710 in computing gain or loss on sale. The Commissioner, however, determined that the property had the same basis in the corporation's hands that it had in the hands of Langdon and Keelan, namely, $683.96.[2] The sole question is whether the transaction of March 10, 1949, constituted a nontaxable exchange under section 112 (b) (5), Internal Revenue Code of 1939.[3] If the transaction was governed by section 112 (b) (5), then there is no dispute that, under section 113 (a) (8), the old basis would carry over into the hands of the corporation. We hold that the transaction under review falls squarely within section 112 (b) (5).

In the first place, "property" was "transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation." Such "property" consisted of the real estate contributed by Langdon and Keelan and the cash furnished by Burrell and Holstein. It was decided nearly 20 years ago in *Halliburton* v. *Commissioner*, 78 F. 2d 265 (C. A. 9), involving comparable provisions in the Revenue Act of 1924, that the term "property" includes money and that the statute covered a transaction in which two taxpayers contributed certain business assets to a newly organized corporation while, at the same time, seven oil companies purchased

---

[2] No question of allocation of basis among the various parcels is here presented.

[3] SEC. 112. RECOGNITION OF GAIN OR LOSS.

  (b) EXCHANGES SOLELY IN KIND.—

    \*        \*        \*        \*        \*        \*

    (5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. \* \* \*

    \*        \*        \*        \*        \*        \*        \*

    (h) DEFINITION OF CONTROL.—As used in this section the term "control" means the ownership of stock possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

stock in the corporation for cash. The result reached in that case has been recognized or followed in a number of subsequent cases. *Portland Oil Co.* v. *Commissioner*, 109 F. 2d 479 (C. A. 1); *Diescher* v. *Commissioner*, 110 F. 2d 90, 91–92 (C. A. 3); *Claude Neon Lights, Inc.*, 35 B. T. A. 424, 429–430; *Cyrus S. Eaton*, 37 B. T. A. 715, 722; *Columbia Oil & Gas Co.*, 41 B. T. A. 38, 44–45; *B. Cohen & Sons Co.*, 42 B. T. A. 1137, 1140–1141; *Hartman Tobacco Co.*, 45 B. T. A. 311, 314; *George P. Skouras*, 45 B. T. A. 1024, 1030; *American Bantam Car Co.*, 11 T. C. 397, 403, affirmed, 177 F. 2d 513 (C. A. 3), certiorari denied, 339 U. S. 920. See G. C. M. 24415, 1944 C. B. 219.

Petitioner relies upon *Lanova Corporation*, 17 T. C. 1178, in which there is language that appears to suggest a different result. In that case a person named Wielich transferred $20,000 in cash to a newly organized corporation (Vaduz) in exchange for 60 per cent of the stock, and a person named Lang transferred patents and inventions to the corporation in exchange for 40 per cent of the stock plus $18,000. The Opinion in that case stated (p. 1184):

This was not a 112 (b) (5) transaction in which the property was exchanged solely for stock and the transferor remained in control of the transferee corporation. Wielich, who received 60 per cent of the stock of Vaduz, had no interest in the Lang inventions while Lang, the transferor, acquired only a 40 per cent stock interest in Vaduz. * * *

To the extent, of course, that the quoted language relied upon Lang's receipt of cash, the Court found section 112 (b) (5) inapplicable because the exchange was not one "solely" for stock or securities, and, regardless of whether the Opinion correctly relied upon that circumstance (c.f. sec. 112 (c) (1)), the present case is distinguishable since all the transferors here received only stock in the new corporation.[4] However, the language of the second sentence quoted above is susceptible of pointing to a result inconsistent with the *Halliburton* line of cases. That line of cases was not discussed or mentioned in the *Lanova* Opinion, and we cannot believe that the Court undertook to lay down a rule inconsistent with those decisions. We follow that line of decisions here and hold that section 112 (b) (5) is not inapplicable merely because two of the transferors contributed real estate to the new corporation while the other two contributed cash.

Second, section 112 (b) (5) requires that "immediately after the exchange such person or persons [the transferors] are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange." These provisions were strictly complied with in this case. The transferors (Langdon, Keelan, Burrell,

---

[4] A further distinction is that in the *Lanova* case, by reason of the $18,000 paid to Lang, the proportional interests of Lang and Wielich were disturbed to such an extent as to render the statute inapplicable. Cf. *Diescher* v. *Commissioner*, 110 F. 2d 90 (C. A. 3).

and Holstein) received all the stock of the corporation, and therefore obtained complete control. Where there are two or more transferors the statutory requirement of control means merely that the transferors in the aggregate must have the specified control immediately after the exchange. There is no statutory requirement that the control of the transferors *inter sese* must be proportionate to the assets transferred by each. As was said in *George P. Skouras*, 45 B. T. A. 1024, 1030:

However, coownership of transferred property is not essential, and the several transfers need not be effected simultaneously if pursuant to a prior arrangement; *nor is control of the new corporation required to be vested in the transferors in proportion to their interests in the property prior to the exchange;* this latter requirement pertains only to the total value of stocks and securities received. * * * [Italics supplied.]

As recognized in the language just quoted, the statute requires in this connection merely that the amount of stock and securities received by each be substantially in proportion to the transferor's interest in the property prior to the exchange. Cf. *Mather & Co.* v. *Commissioner*, 171 F. 2d 864 (C. A. 3), certiorari denied, 337 U. S. 907; *F. L. G. Straubel*, 29 B. T. A. 516. But that requirement has been fully satisfied here. Langdon and Keelan received common and preferred stock of $16,710 par value in exchange for real estate then worth $16,710, and Burrell and Holstein received common stock of $210 par value in exchange for $210 in cash. The interest of each transferor in the value of the assets transferred to the corporation was precisely equivalent to the stock received in exchange. Cf. *United Carbon Co.* v. *Commissioner*, 90 F. 2d 43 (C. A. 4).

The provisions of section 112 (b) (5) are literally applicable to the transaction under review. We know of no sound reason why they should not be applied. The determination of the Commissioner must be approved. *Decisions will be entered for the respondent.*