Artistic Venetian Blind Corporation v. Commissioner.
Artistic Venetian Blind Corp. v. Commissioner
Docket No. 50420.
United States Tax Court
T.C. Memo 1956-43; 1956 Tax Ct. Memo LEXIS 251; 15 T.C.M. (CCH) 192; T.C.M. (RIA) 56043; February 24, 1956
Milton Young, Esq., 595 Madison Avenue, New York, N. Y., for the petitioner. James J. Quinn, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in the petitioner's income taxes as follows: Period
Deficiency
January 1, 1946 to March 31, 1946
$ 651.83
April 1, 1946, to March 31, 1947
6,208.99
The only issue for decision is whether for the taxable year ended March 31, 1947, the petitioner is entitled to a deduction of $7,500 under section 23(b) of the Internal Revenue Code of 1939 for interest accrued on indebtedness to its majority stockholder. All other issues were settled by the parties prior to the hearing herein. Findings of Fact The petitioner is a corporation organized under the laws of the *252 State of New York on or about December 20, 1945, with its principal place of business in Mount Vernon, New York. It maintained its books of account on the accrual basis and filed its tax returns on a fiscal year ended March 31. The return for the period here involved was filed with the collector of internal revenue for the third district of New York. On or about January 2, 1946, Stephen A. O'Sullivan transferred certain assets to the petitioner. The assets transferred were substantially all of the assets, subject to liabilities, as of December 31, 1945, of O'Sullivan doing business as Artistic Venetian Blind Company. He had been engaged in that business for 10 years. Following the transfer, the $1.00 par value common stock of the petitioner was held as follows: Mildred Lovejoy
300 shares
Kenneth Altman
12 shares
Samuel P. Parness
9 shares
Stephen A. O'Sullivan
650 shares
The petitioner also issued preferred stock as follows: Kenneth Altman
$4,800 par value
Mildred Lovejoy
2,000 par value
Samuel P. Parness
3,600 par value
O'Sullivan held none of the preferred shares. From the time of incorporation and through the fiscal year in issue, *253 he was the president of the petitioner. In 1946 he was 53 years of age, unmarried, and actively engaged in several other business enterprises. Altman and Parness were employees of O'Sullivan prior to the formation of the petitioner. Mildred Lovejoy was not a regular employee but she previously had been a partner of O'Sullivan, was associated with him in the organization of the petitioner, and subsequently, on August 1, 1950, married him. The assets and liabilities transferred to the petitioner on January 2, 1946, were as follows: Liabilities
Item
Assets
and Capital
Cash in Bank - Public National Bank
$ 67,249.81
Cash in Bank - Corn Exchange Bank
513.06
Petty Cash
100.00
Accounts Receivable
69,125.41
Res. for Bad Debts
$ 374.45
Loans - Exchanges
1,420.07
Deposits
55.00
Merchandise Inventory
68,490.68
Machinery - Equipment
10,966.14
Res. for Deprec. M. and E.
$ 5,314.28
Tools
$ 2,589.01
Res. for Deprec. - Tools
1,116.92
Automobile - Trucks
970.25
Res. for Deprec. - autos and trucks
969.25
Furniture and Fixtures
1,236.58
Res. for Deprec. - Furn. & Fix.
744.47
Accounts Payable
29,447.93
Social Security Payable
423.44
N.Y.S. Unemploy. Ins. payable
566.27
Sales tax payable
12.64
Withholding tax payable
5,817.70
Taxes pay. - Washington Unemploy
5.09
Due to Shade Shop
274.49
Federal Unemployment Tax
16,828.63
N.Y. State Inc. Tax
220.74
900.00
Due from subscribers to stock
10,721.00 *
Reserve - Customers Disc.
1,071.35
Notes payable - S. A. O'Sullivan
100,000.00
Loans payable - S. A. O'Sullivan
57,978.36
Common - Capital stock
971.00
Preferred capital stock
10,400.00 *
$233,437.01
$233,437.01
*254 The loan payable item of $57,978.36 was, in effect, a reserve for taxes and represented an existing liability of O'Sullivan for Federal income taxes of $51,960.33 and a small unexplained balance. The tax due was paid by funds of the petitioner within the first two months of 1946. During 1945 O'Sullivan held various conversations with the several persons who later became stockholders in the petitioner and at one conference in December 1945 the organization and corporate structure of the petitioner was agreed upon. It was then contemplated that the corporation would issue a note to O'Sullivan in the approximate amount of $100,000 with interest at 6 per cent in connection with his transfer to the corporation of the assets of the personal proprietorship. O'Sullivan did not contemplate any payment on the principal of such a note "for the time being", it being his intention that the $100,000 should be "a set debt". It had been thought that Altman and Parness would take 49 per cent of the common stock and O'Sullivan 51 per cent, but it was decided *255 that initially they would put almost all of their investment in preferred stock and thus carry less of a risk of loss. The preferred stock was entitled to 7 per cent cumulative dividends but had no voting privilege and was redeemable at the option of the Board of Directors on thirty days' notice at 102 per cent of par after January 2, 1947, which call price increased by 2 per cent of par each year until it reached 110 per cent of par on January 1, 1951. The balance sheets for March 31, 1946, April 1, 1946 and March 31, 1947, set forth in Schedule L of the petitioner's Federal income tax returns filed for the taxable period January 1, 1946, to March 31, 1946, and for the fiscal year ended March 31, 1947, all report the sum of $100,000 as a liability under the item "Bonds, Notes and Mortgages Payable." The general ledger of the petitioner shows an opening entry dated January 2, 1946, designated "Notes Payable - Stephen A. O'Sullivan" in the amount of $100,000. No note of any kind was ever issued by the petitioner to O'Sullivan. The petitioner paid O'Sullivan $7,500 by check dated June 11, 1947. It claimed a deduction for interest of $7,549.13 on its return for the taxable year *256 ended March 31, 1947, of which the Commissioner disallowed $7,500. It did not claim any interest deduction on its return for the period January 1, 1946, to March 31, 1946. It accrued the amount of $2,000 as interest due O'Sullivan for the period April 1, 1947, through March 31, 1948, and this amount was reported by O'Sullivan as income in his 1948 return. Petitioner accrued no amount as interest after March 31, 1948. The petitioner manufactured venetian blinds and it was necessary in the operation of the business to carry comparatively large inventories. On April 1, 1946, its inventory was $92,826.90, and on March 31, 1947, $124,406.86. The petitioner had earned surplus of $18,866.52 and $51,568.17 on March 31, 1946, and March 31, 1947, respectively. No distributions chargeable to earned surplus were made during the taxable periods ended on the above dates. The total capital of the petitioner on January 2, 1946, as represented by the common and preferred stock, was $11,371, of which $10,400 was represented by preferred stock. In the latter part of 1946, and again in 1950, O'Sullivan agreed to subordinate his claim against petitioner to all other creditors of the petitioner *257 in order that it might obtain a more favorable credit rating. In 1948 and 1950 certain bookkeeping entries were made which reduced the balance of the petitioner's obligation to O'Sullivan to $31,533.02. No direct payment was made to him by petitioner. The stipulation of facts and the stipulation with respect to the settlement of the other issues are incorporated herein by this reference. Opinion KERN, Judge: The question to be decided in this case is whether the realities of the transactions described in our findings of fact gave rise to a debt of $100,000 owed by petitioner to its principal incorporator resulting in the payments made to him being deductible as interest under section 23(b) of the Internal Revenue Code of 1939, or the realities of the transactions indicate that there was a contribution to petitioner's capital by the incorporator in the amount of $100,000, so that the payments made to him on account of this contribution should be considered to be in substance dividends rather than interest. In considering this question certain general principles must be borne in mind: all of the facts and circumstances connected with the transactions must be considered and *258 no one factor is controlling ( John Kelley Co., 1 T.C. 457, affd. 326 U.S. 521; the substance of the transactions rather than the forms followed will prevail ( Gooding Amusement Co., 23 T.C. 408); and the burden of proving that the disputed item is interest on an indebtedness is on petitioner in view of respondent's determination that it was a non-deductible distribution of profits. We are not convinced by the record before us that the disputed item should be considered as interest on an indebtedness. Among the criteria considered by us in reaching this conclusion are the following: O'Sullivan turned over to petitioner upon its incorporation the assets of a sole proprietorship having a net value a little in excess of $100,000 for $650 par value of common stock plus a so-called "debt" of $100,000; petitioner's total outstanding common stock amounted to only $971; even though O'Sullivan's associates subscribed to a little over $10,000 of preferred stock, it was obvious that petitioner, with an inventory of $92,826 on April 1, 1946, and of $124,406 on March 31, 1947, would require the use of more capital than that represented by its formal capital *259 account if it was to remain in business; O'Sullivan's testimony that he intended to leave the total amount of $100,000 in the corporation "for the time being" as "a set debt" indicates his recognition of petitioner's need for the use of this sum as capital; despite the entries on petitioner's books and tax returns, no note was ever issued to O'Sullivan by petitioner to evidence any "debt"; no maturity date or method of repayment of the "debt" was established or even testified to; although there was testimony to the effect that in conversations between O'Sullivan and his associates prior to petitioner's incorporation it was agreed that the rate of "interest" to be paid on the "debt" was 6 per cent, the amounts paid to O'Sullivan were variable and were accrued and paid irregularly indicating that payments were made to O'Sullivan when the corporate earnings and other circumstances would justify them; on at least two occasions O'Sullivan formally subordinated this "debt" to all other creditors of petitioner in order not to affect the credit rating; and, finally, there was never any corporate action by petitioner's directors or stockholders after its incorporation which confirmed the terms *260 of any understanding between O'Sullivan and his associates prior to its incorporation to the effect that it would be indebted to O'Sullivan in the amount of $100,000. On the one issue presented herein our decision is in favor of respondent. See Estate of Herbert B. Miller, 24 T.C. 923 (August 23, 1955); John W. Walter, Inc., 23 T.C. 550; Ruspyn Corporation, 18 T.C. 769; Clyde Bacon, Inc., 4 T.C. 1107; Cohen v. Commissioner, 148 Fed. (2d) 336. Decision will be entered under Rule 50. Footnotes
*. The additional capital represented by the subscriptions to preferred stock was, of course, not transferred from the proprietorship.↩