NEVILLE COKE & CHEMICAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109575. Promulgated January 25, 1944.

*Thomas Watson, Esq.*, and *D. G. Sisterson, C. P. A.*, for the petitioner.

*William A. Schmitt, Esq.*, for the respondent.

114

OPINION.

LEECH, *Judge*: The only issue here is with respect to the exchange by petitioner of its three, four, and five-year notes for debentures and stock of the debtor corporation in the 1935–1936 reorganization. No question is raised as to the tax consequence of petitioner's exchange in that reorganization of its bonds, stock, and indebtedness other than that evidenced by these notes.

Petitioner contends that the three, four, and five-year notes which it exchanged for new debentures under the plan of reorganization constituted securities within the meaning of section 112 (b) (3) of the Revenue Act of 1936, and that, since the reorganization in which these were exchanged was within section 112 (g) (1) of that act, the receipt of the new debentures and stock in the exchange is not taxable. Although this argument is advanced by petitioner as an alternative contention, to sustain it would be to decide the general issue here presented. Consequently we pass upon it first.

This situation is, we think, similar on this point to that we considered in *Sisto Financial Corporation*, 47 B. T. A. 425, in which we said:

* * * The six-month promissory note of $50,000 secured by a second mortgage and other collateral, as well as the demand notes of Barium owned by petitioner, were evidences only of current financing for operating expenses. The loans evidenced by these notes gave petitioner no proprietary interest in Barium. By virtue of such loans petitioner became a mere creditor of Barium and the evidencing notes are not "securities" within the meaning of section 112 (b) (3), *supra.* * * *

Our decision upon this point in the *Sisto* case was affirmed by the Second Circuit, 139 Fed. (2d) 253.

The notes here in question were acquired by petitioner from the Hillman Co. and the Rainey Co. at the time of its incorporation by those companies. They were large creditors of the debtor corporations as suppliers of the coal needed by it in its operations. Because of the advantageous business arrangement with a valuable customer, they had made advances to assist it in carrying on its operations. There is no indication that this indebtedness represented an investment in the businss of the debtor corporation. We think the relationship between petitioner and the debtor corporation as evidenced by these notes was that of debtor and creditor. We therefore hold that the notes in question were not securities within the purview of section 112 (b) (3), *supra*. *Worcester Salt Co.* v. *Commissioner*, 75 Fed. (2d) 251; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U. S. 462; *L. & E. Stirn, Inc.*, 107 Fed. (2d) 390.

Petitioner further contends that, even if the transaction in which the notes were exchanged for debentures and stock were taxable in character, since the debentures and stock were received in satisfaction

of the note indebtedness, the transaction must be treated as a purchase of the debentures and stock for the amount of the indebtedness and not as a taxable exchange of property. As a basis for this contention petitioner relies wholly upon our decision in *Sisto Financial Corpoartion, supra.* We held there that the taxpayer, as a creditor, in accepting stock of a debtor in satisfaction of the debt, did not exchange the indebtedness for the stock but merely purchased the stock for the amount of the indebtedness and that, in reality, the transaction was one in which the indebtedness had been paid in cash and the cash had been thereupon used to purchase the stock.

It is noted that upon this point our decision in the *Sisto* case was reversed by the recent decision of the Second Circuit in *Commissioner* v. *Sisto Financial Corporation, supra.* But, aside from any question of the correctness of our conclusion on this issue in that case, we do not agree with petitioner that the situation here is identical with the one there. In the *Sisto* case a creditor was paid in full. The result of the transaction was that it ceased to be a creditor and became a stockholder of the debtor corporation. In the present case the transaction did not eliminate indebtedness on the part of the debtor corporation to petitioner. Such indebtedness remained in identically the same amount, being represented by a promise to pay evidenced by debentures, whereas the same amount of indebtedness had theretofore been represented by notes. Here the creditor is still a creditor in the same amount. And in addition to the debentures which we have found had a value equal to its cost of the surrendered notes, the creditor has received stock in the debtor corporation of a definite and determined value. Certainly, looking at such situation realistically, it can not soundly be held that a debt due the creditor was paid and the proceeds used by the creditor to purchase debentures and stock. See *Eckert* v. *Burnet*, 283 U. S. 140. We think that petitioner realized a gain represented by the value of the stock received. Cf. *Commissioner* v. *National Bank of Commerce of San Antonio*, 112 Fed. (2d) 946; *Bingham* v. *Commissioner*, 105 Fed. (2d) 971; *Commissioner* v. *Spreckels*, 120 Fed. (2d) 517.

Peititioner argues further that, in any event, respondent in computing the deficiency has ascribed an excessive value to the debentures and the stock. Respondent determined the debentures to be worth their face value and the stock $5.94 a share.

Our finding of a value of par for the debentures when received and $5 per share for the stock disposes of this issue. We think this finding is amply justified by the evidence. There is no doubt but that the reorganization placed the debtor corporation in a very much stronger financial position than before. The debentures appear to have been amply secured. They bore interest. We think, in the light

of these facts and others disclosed at the time of their receipt by petitioner, they had a fair market value equal to their face value. The correctness of this conclusion appears to be borne out by the fact that they were paid in full in the year following their receipt.

As to the stock received, we can not agree that it had a fair market value at the time of its receipt of $5.94 per share. The unsuccessful attempts made to sell this stock at a price of $5 per share shortly after its receipt convince us that it was not worth in excess of this amount. Respondent has taken as a value the price at which it sold in July 1936. We think, however, this determination overlooks the conditions existing as of the time of the receipt of the stock and the result of efforts made to purchase or to sell it at about that time. In July of 1936, when the stock sold at $5.94 per share, the situation with respect to the corporation was distinctly different. As of that date it had realized a substantial profit upon its operations for the first six months of the year, whereas its record of operations for several years prior to that time had been one of large operating losses.

With respect to the deficiency in personal holding company surtax and the penalty thereon, the parties agree that the recomputation under Rule 50 of such deficiency in income tax as may be found will determine whether petitioner is subject to tax as a personal holding company.

*Decision will be entered under Rule 50.*