46

JOHN W. HARRISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLIFFORD F. HARRISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47962, 47963.    Filed April 20, 1955.

*Martin A. Rosenberg, Esq.*, for the petitioners.
*Urban C. Bergbauer, Esq.*, for the respondent.

## OPINION.

Johnson, *Judge:* The first issue we must consider is whether the exchange of partnership assets for corporate stock and drawing accounts occurred in 1946 or 1947. The petitioners contend that the exchange occurred in 1946 and under section 275 (c) [1] of the 1939 Code the statute of limitations would have run against respondent's determination. It is respondent's contention that the exchange occurred in 1947.

Under Missouri law the existence of a corporation dates from the time of the filing of the articles of incorporation with the secretary of state. The certificate given by the secretary of state is evidence in the State courts of the existence of the corporation. However, a corporation may not commence business until certain requirements are met, and a certificate authorizing it to commence business has been issued by the secretary of state. See secs. 351.070 and 351.075, R. S. Mo. 1949.

Also, under State law the filing of the articles of incorporation by the secretary of state constitutes acceptance by the corporation of all

---

[1] SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

(c) OMISSION FROM GROSS INCOME.—If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.

existing subscriptions to its shares, and thereupon subscribers for shares or their assignees shall be deemed to be stockholders of the corporation. Sec. 351.175, R. S. Mo. 1949.

Since the corporation filed its articles of incorporation in 1946, and since a certificate was issued by the secretary of state in 1946, the corporation did exist in 1946. In addition, the articles of incorporation stated that petitioners and Greve subscribed to all the authorized capital stock; therefore, the corporation had bona fide shareholders in 1946. However, according to the jurisprudence of Missouri, the articles of incorporation are not proof conclusively that the stock was fully paid. *Raleigh Investment Co.* v. *Bunker*, 285 Mo. 440, 227 S. W. 121; *Yardley* v. *Caruthersville Motor Co.*, 225 Mo. App. 321, 35 S. W. 2d 971. Therefore, the articles of incorporation are not proof conclusively that the partnership assets were transferred to the corporation in 1946.

Let us briefly review the facts. There was a partnership that closed its books as of December 31, 1946. Also in 1946 there was a corporation with bona fide stockholders, but the corporate books show no record of any corporate property ownership until January 2, 1947. No corporate tax return was filed for 1946.

The articles of incorporation, dated December 23, 1946, stated that the petitioners gave $455,000 of assets subject to $305,000 of liabilities for $150,000 of corporate stock, but the corporate books as of January 2, 1947, show that $548,426.59 of assets subject to liabilities of $92,543.48 ($44,019.92 plus $48,523.56) to petitioners, and $305,883.11 to others, was exchanged for $150,000 of corporate stock. The discrepancy between the stated values in the articles of incorporation and the actual book values was a result of a rough approximation on the part of petitioners' attorney when he drafted the articles of incorporation. It is significant that if the assets had in fact been transferred at the time the articles of incorporation had been drafted or immediately thereafter, there would have been no need for an approximation. The books would have reflected the actual value of the assets involved in the transfer.

The statement in the articles of incorporation that certain assets were transferred to the corporation is not conclusive proof of the transfer, particularly since there has been no showing that the assets were closed out of the partnership books prior to December 31, 1946. Further, there is no showing that the assets were transferred to the corporate books prior to January 2, 1947. Finally, the intention of the petitioners was that the corporation would commence business as of the first day of January 1947. On these facts we can only conclude that the assets were transferred in 1947 and not 1946. That statute of limitations is not a bar to the respondent's determination.

Next, we shall consider the remaining two issues together, that is, was there an exchange under section 112 (b) (5), and if not, was there a gain within section 112 (c) (1). First, we must consider whether the exchange of the partnership assets was within the provisions of section 112 (b) (5), that is, was there an exchange of property to a corporation by petitioners solely in exchange for stock and securities of the corporation, and immediately after the exchange were petitioners in control of the corporation, and, finally, was the amount of stock and securities received by petitioners substantially in proportion to their interest in the property prior to the exchange. If the exchange was within section 112 (b) (5), no gain or loss would be recognized.

Respondent contends that petitioners received something other than stock and securities in the exchange because drawing accounts are not securities within the contemplation of section 112 (b) (5). Respondent determined that the drawing accounts were "other property" and under section 112 (c) (1)[2] petitioners incurred a recognized gain in the exchange. On the other hand, petitioners contend that they have complied with section 112 (b) (5).

The net worth of the partnership at the close of business on December 31, 1946, was $242,400.62. There is no dispute that the $150,000 of capital stock was distributed to petitioners in the proportion of their interest in the partnership property. The question arises as to the $92,400.62 which is the difference between the partnership net worth and the stated value of the capital stock. This $92,400.62 was credited on the corporate books as "John W. Harrison, Drawing $44,019.92" and "Clifford F. Harrison, Drawing $48,523.56." No explanation was given for the variance between $92,400.62 and the aggregate of the drawing account entries which amounted to $92,543.48.

According to the stipulated facts the journal entry on the corporate books correctly reflected all of the partnership assets and liabilities as of December 31, 1946. But upon careful examination of the record it appears that the corporate journal entries, denominated drawing accounts, did not have similar liability accounts in the partnership. Rather the drawing accounts' counterpart in the partnership was an undenominated net worth of at least $92,400.62. It now appears, even though a goodwill account was not set up on the corporation's books, that this net worth was in the nature of partnership goodwill.

---

[2] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(c) GAIN FROM EXCHANGES NOT SOLELY IN KIND.—

(1) If an exchange would be within the provisions of subsection (b) (1), (2), (3), or (5), or within the provisions of subsection (1), of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph or by subsection (1) to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property.

By setting up part of the partnership net worth as drawing accounts, petitioners acquired a right to withdraw substantial sums from the corporation. The record contains no evidence as to restrictions on the use of the drawing accounts.

Now, if this exchange is to be within section 112 (b) (5), the drawing accounts must come within the definition of "securities." In the past securities have been held to be such obligations as bonds, debenture notes, and subscription rights, but short-term notes for 3, 4, and 5 years are not deemed securities. *Neville Coke & Chemical Co.*, 3 T. C. 113, affd. 148 F. 2d 599; *Pacific Public Service Co.*, 4 T. C. 742, affd. 154 F. 2d 713. Thus it would appear under prior decisions that "securities" are in the nature of long-term obligations. When long-term obligations and stock are exchanged for property, the original interest in the business is continued and perpetuated, which is in accord with the underlying theory of a tax-free exchange. The original interest is not retained where cash or short-term notes are given in exchange for property; similarly, the original interest is impaired when drawing accounts are given in exchange for property.

It is our conclusion, considering the nature of the drawing accounts in this case, that they are not "securities" within the meaning of section 112 (b) (5). Therefore, the exchange in these proceedings is one where property was exchanged for stock and other property. Since stock and other property were involved in the exchange, section 112 (c) must be considered to determine whether petitioners had a taxable gain.

Under section 112 (c) (1) if an exchange would be within the provisions of section 112 (b) (5), if it were not for the fact that the property received in exchange consists of not only stock and securities but also other property or money, then the gain, if any, to the recipient shall be recognized but in an amount not in excess of the sum of such money and the fair market value of such other property.

Now the question arises, what is the fair market value of the drawing accounts? No attempt has been made to show that the book value of the drawing accounts was not fair market value. No evidence was offered to show that the corporation could not pay the stated value of the drawing accounts, and no evidence was offered to show what might be a discounted value if the drawing accounts were assigned to others by petitioners.

Notwithstanding the fact that the petitioners have not shown what might be a fair market value for the drawing accounts, they have attacked respondent's determination in another way.

Petitioners maintain that all assets in excess of $455,000 (the value of the assets transferred according to the articles of incorporation) had an offsetting account on the corporate books as the petitioners' drawing accounts. They contend that the excess over $455,000 was

52

goodwill even though no specific goodwill account has been set up on the corporate books.

The parties have stipulated that the value of goodwill was $255,317.20. Now, on brief, without proof that the stipulation was erroneous, petitioners argue that goodwill should be approximately $42,000, and the inference is that the fair market value of the drawing accounts could not exceed $42,000, the alleged value of goodwill. We think on the present facts that the actual value of goodwill is not important to this decision. What is important is the fact that both parties agree that the corporation acquired something in value more than the net worth represented by $150,000 of corporate stock. Petitioners have not shown what might be a fair market value of the drawing accounts. Nor have petitioners shown respondent's determination to be erroneous. Therefore, on this record, respondent's determination must be sustained.

Reviewed by the Court.

*Decisions will be entered for the respondent.*