John W. HARRISON, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Clifford F. HARRISON, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 15414, 15415.

United States Court of Appeals
Eighth Circuit.

July 12, 1956.

Rehearing Denied Aug. 8, 1956.

Martin A. Rosenberg and Rodney Weiss, St. Louis, Mo. (Gilbert Weiss, St. Louis, Mo., on the brief), for petitioners.

Melva M. Graney, Attorney, Department of Justice, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, and Grant W. Wiprud, Attorneys, Department of Justice, Washington, D. C., on the brief), for respondent.

Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.

JOHNSEN, Circuit Judge.

Deficiency assessments by the Commissioner of Internal Revenue against two taxpayers, for the calendar year 1947, were upheld by the Tax Court, 24 T.C. 46 and each of the taxpayers has petitioned for review.

The first contention made by petitioners is that the exchange transaction, on which the assessments were predicated,

occurred in 1946, and not in 1947, so that any liability which they might have had on account thereof, as an "omission from gross income", was barred by not having been asserted against them, under § 275 (c) of the Internal Revenue Code of 1939, 26 U.S.C.A., "within 5 years after the return was filed." The Commissioner concedes that, if the transfer involved occurred in 1946, instead of 1947, the tax liability is barred.

Petitioners' second contention is that in any event the transaction had not given rise to any realization of capital gain by them, so that there existed no basis for a tax to be assessed in relation to it.

The situation is one in which petitioners incorporated their previous partnership business, the Harrison Lumber & Hardware Co.; made transfer at some point to the corporation of all the assets of the partnership, subject to its liabilities; and had the corporation in return issue to them the whole of its capital stock,[1] as well as set up a credit on its books in favor of each of them, as individual drawing accounts, in a total amount for the two of $92,534.48.[2] It was these drawing accounts, in their full amount—the Tax Court having taken them at face value [3]—for which petitioners were held to have a tax liability, as constituting capital gain realized by them out of the transaction.

On petitioners' first contention—that of the statute of limitations—they argue that the Tax Court should have recognized the transaction between the partnership and the corporation as being one that had occurred in 1946 and not 1947, in that the Articles of Incorporation

were executed on December 23, 1946 and filed in the office of the Secretary of State of Missouri on December 28, 1946, with a Certificate of Incorporation being duly issued by that officer to the corporation on the same date; that under the statutes of Missouri, V.A.M.S. § 351.075, the corporation acquired legal existence at that time and thus became possessed of capacity to hold title to property; that it accordingly on that date (if not before) became vested with the title to the assets of the partnership listed in the Articles of Incorporation, which property the Articles declared had "paid up", in its fixed net value of $150,000, the amount of the capital with which the corporation was to commence business; and that this passing of title from the partnership to the corporation in 1946 was not only further demonstrated, but was also rendered legally conclusive as a matter of Missouri law, by the affidavit to the Articles on the part of petitioners, as incorporators and in their status of then owners, certifying in connection with the incorporation as to their knowledge of the property "taken in payment of the shares of the Corporation", which was described in the Articles, and as to the property having the value placed upon it in the Articles.

The Tax Court recognized that the corporation had acquired legal existence in 1946 but said that Missouri law did not treat recitations in articles of incorporation as conclusive of stock subscriptions having in fact been paid—citing Raleigh Investment Co. v. Bunker, 285 Mo. 440, 227 S.W. 121, and Yardley v. Caruthersville Motor Co., 225 Mo.App. 321, 35 S.W. 2d 971.

1. One share of stock was put in the name of the partners' attorney, in qualification of his status as an incorporator and as a director, but it was stipulated that the share actually was owned by one of petitioners.

2. This amount, as set up on the books of the corporation, was $142.86 in excess of the difference between the $242,400.62 net worth value of the partnership's assets and the $150,000 value basis on which the stock was issued. The difference is not explained by the record, but appar-

ently it bore some relationship to the share of stock put in the name of the attorney for the partners, since it corresponded exactly to the book value of the share, and since a charge in the same amount was put upon the books of the corporation against the attorney. This accounting confusion, however, is not claimed by either party to be of any significance here and so it will be ignored.

3. There is no contention here that the value of the drawing accounts at the time was less than their face amounts.

Against such implications on the time of transfer by the partnership as the Articles might prima facie have, the Tax Court pointed out that the evidence undisputedly showed that the partnership actually closed its books as of December 31, 1946, and not as of an earlier date, and that the corporation did not open its books until January 2, 1947, with the property received by it from the partnership being set up on its records as corporate assets under that date. With no formal instruments of transfer having been used by the parties, the facts just stated seemed to the Tax Court persuasive that the partnership had continued to operate the business and had retained dominion of the assets as owner through the remainder of the year 1946, and that the assets had not in fact been passed over by the partnership to the corporation in ownership and possession until January 2, 1947.

Beyond the circumstances of the continued operation of the business by the partnership until 1947 and of the lack of records to show any property ownership by the corporation until January 2, 1947, the Tax Court found additional support for its conclusion, that the transfer had not been culminated in 1946, in the large discrepancy which existed between the amount and the categories of property set up on the books of the corporation on January 2, 1947, as being transferred from the partnership, and the amount and the categories of property listed in the Articles under date of December 23, 1946, as being intended to be transferred to the corporation.

Property in the amount of $548,426.-59 was shown on the corporation's records as having been received by it, while property in the amount of $455,000 only was listed in the Articles of Incorporation as being intended to be transferred from the partnership. Thus, beyond the property listed in the Articles of Incorporation, assets in the amount of over $90,000, not covered by the recitals of the Articles, had at some time been transferred to the corporation, with no other indication that this was to be done,

or when it had occurred, except the entry appearing upon the corporation's records dated January 2, 1947. Moreover, the general categories of property set up on the corporation's records did not wholly conform in their characterizations or descriptions to the language which had been used in the Articles of Incorporation.

Petitioners' argument that the transfer of the property was required to be held to have occurred in 1946 is grounded primarily upon the case of Bondurant v. Raven Coal Co., Mo.App., 25 S.W.2d 566, which they view as holding that, where incorporators recite in their articles of incorporation that certain described assets, of which they are the owners, have been paid in by them as initial capital, the recital is conclusive against them and operates to transfer title to the corporation as a matter of law.

The Court's opinion says, at page 573: "If Mills and Mayo owned this land at the time they incorporated the company and they stated in the articles of incorporation that said land was the property of the corporation and in the hands and custody of the first board of directors, they being two of the four directors, then the land became the property of the corporation as a matter of law. Such a title in the corporation would be good upon the ground of estoppel alone. But the recitations in the articles of association were more than an estoppel. They constituted a declaration of a dry trust, which is as good a conveyance as a quitclaim or warranty deed in the usual form."

On whatever basis, or to whatever extent, or in whatever form, the Court by this holding may have intended that a declaration on the part of the incorporators in their articles of incorporation should operate to vest rights or title to property in the corporation, we do not believe that such a rule of legal vesting as the Court may have intended to lay down would be given any extension by the Missouri courts, to make it have application to property which was not legally described and identifiable on the face of the articles.

Here, as we have said, the Articles, as drawn and filed listed certain categories of assets, in the amount or value of $455,000, and not these categories with others (as set up on the corporation's records) in the total amount or value of $548,426.59, as constituting the property intended to be or having been transferred to the corporation. There accordingly was property in an amount of more than $90,000 which the Articles did not on their face in any way purport to cover.[4] With no obligation on the part of petitioners shown by the Articles to make transfer of this excess property to the corporation; with petitioners not having closed the business and books of the partnership until December 31, 1946; and with the record before us showing that all the assets transferred had been set up on the corporation's records as of January 2, 1947—we think that the Bondurant case was not legally controlling of the present situation, and that the Tax Court properly could conclude, as it did, that the transfer of assets in their whole was not completed and given effect between the parties during the year 1946, so that the question of tax liability connected with it was not, as contended by petitioners, barred by the statute of limitations.

On petitioners' second contention, the gist of the argument made is that they could not be held to have realized any gain from the drawing accounts set up in their favor on the corporation's records, since the drawing accounts did not amount to "boot" in the situation, but "all that was done here was that the corporation assumed a liability of the partnership (the liability of the partnership to the partners) along with the liabilities of the partnership to others". But no such liability had been set up on the partnership's records, and there is nothing in the record to show that the partnership had any such liability in fact. To the contrary, it was stipulated that at the time the books and records of the partnership were closed, the partnership had a net worth of $242,400.62—which, as has been noted,[5] corresponded to the sum of the value of the capital stock and of the drawing accounts, that petitioners received from the corporation.

Petitioners thus received, in exchange for the property transferred to the corporation, stock and drawing accounts in the corporation. Under section 112(b) (5) of the Internal Revenue Code of 1939, 26 U.S.C.A., "No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation * * *."

But the demand drawing accounts which petitioners received from the corporation did not constitute "securities", within the meaning of that term as used in § 112(b) (5), for purposes of non-recognition of gain or loss. Cf. Pacific Public Service Co. v. Commissioner, 9 Cir., 154 F.2d 713; Neville Coke & Chemical Co. v. Commissioner, 3 Cir., 148 F.2d 599; Lloyd-Smith v. Commissioner, 2 Cir., 116 F.2d 642; Pinellas Ice & Cold Storage Co. v. Commissioner, 287 U.S. 462, 53 S.Ct. 257, 77 L.Ed. 428. They were entitled to be regarded as "other property", within the provision of § 112 (c) (1) of the Code, for the recognizing of gain, that "If an exchange would be within the provisions of subsection (b) * * * (5) * * * of this section if it were not for the fact that the property received in exchange consists not only of property permitted by such paragraph * * * to be received without the recognition of gain, but also of other property or money, then the gain, if any, to the recipient shall be recognized, but in an amount not in excess of the sum of such money and the fair market value of such other property."

How there came into the transactional picture, within a period of ten days from

---

4. Thus, the Articles did not even state that all of the partnership assets were to be transferred to the corporation.

5. See footnote 2, supra.

the time that the articles of incorporation were drawn, an amount of assets having a value of more than $90,000 over the property listed in the Articles, is not made clear. It would hardly be required to be accepted that the Articles had inadvertently contained an under-estimation of quantity and value, as against the facts that a decidedly substantial difference was involved, and that petitioners had certified under positive oath, for purposes of the incorporation, that "they knew the property described" in the Articles, and that "the value placed on the same is the actual cash value of said property." Besides, it would not seem convincing that such an inadvertent omission should occur, when the partnership maintained books and records, as the reference to them in the stipulation indicates.

What the net worth was that appeared upon the partnership books on December 23, 1946, the record does not show. We only know that when the books were closed as of December 31, 1946, they "reflected a net worth of the partnership in the amount of $242,400.62." An increase may have been made in the value previously carried for the assets, in order to reflect their actual worth at the time the partnership ceased its business. But we need not speculate upon that question. Whatever may be the actual explanation of the discrepancy and how it occurred, when the Commissioner made the deficiency assessments against petitioners that he did, subjecting them to a liability for capital gain on the basis of the drawing accounts received by them, there was implicit in the determination which he so made a recognition by him of a basis for the assets in petitioners' hands of $150,000 only—the amount of the capital stock.

If there was any right to claim that the assets had in fact a basis to petitioners, for tax purposes, of $242,400.62, so that no capital gain would be capable of existing from a sale of the property for that figure, or from an exchange of it on that basis for "other property" of the same value, then petitioners, in seeking a re-determination from the Tax Court, should have offered evidence which would demonstrate the Commissioner's lack of right to use the basis which he impliedly did, and which would provide ground for the Tax Court to determine what the actual basis was. This petitioners did not do.

As against the presumption attaching to a determination by the Commissioner, petitioners are not in a position to complain of the Tax Court's sustaining of that determination in the present situation. A taxpayer who challenges the factual basis of a deficiency assessment by the Commissioner must produce evidence before the Tax Court which provides ground sufficient to enable the Tax Court to pass upon the particular fact and so to impose upon it the duty of making the determination independently. National Weeklies, Inc., v. Commissioner, 8 Cir., 137 F.2d 39, 42.

The decision of the Tax Court in each of the two cases is affirmed.