## Warren H. Brown, et al.,[1] Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 50179–50183.    Filed October 18, 1956.

*W. D. Eberle, Esq.*, for the petitioners.

*John H. Welch, Esq.*, and *Wilford H. Payne, Esq.*, for the respondent.

[1] Proceedings of the following petitioners are consolidated herewith: Carl E. Brown, Docket No. 50180; Brown's Tie & Lumber Company, Docket No. 50181; Ida H. Brown, Docket No. 50182; and Jayne J. Brown, Docket No. 50183.

OPINION.

WITHEY, *Judge:* Petitioners contend that the execution of the installment contract on January 2, 1947, constituted a sales transaction, separate and distinct from the exchange of December 31, 1946, and created a valid debtor-creditor relationship between the partners and

the corporation. Petitioners therefore maintain that the gain realized on the transaction should be recognized, and that the corporation is entitled to utilize the fair market value of the assets at the time of the transfer as its basis for depreciation pursuant to section 113 (a) of the 1939 Code.[2]

The respondent has taken the position that the exchange of assets for stock which took place on December 31, 1946, and the execution of the installment sales contract on January 2, 1947, together with the transfer of assets pursuant thereto, should be regarded as steps in a single transaction; that the installment contract between the partners and the newly formed corporation was without substance and, in fact, represented equity capital; and that the entire transaction in substance was an exchange of property for stock or stock and securities of a corporation controlled by the transferors. Consequently, the respondent contends that no gain is recognized in the transaction pursuant to the provisions of section 112 (b) (5) of the Code,[3] and that the basis to the transferee corporation of the partnership assets received by it is the same as that in the hands of the transferors immediately prior to the exchange under section 113 (a) (8) [4] of the Code.

In support of his position, respondent relies on our decisions in *Estate of Herbert B. Miller*, 24 T. C. 923 (on appeal C. A. 9), and *Gooding Amusement Co.*, 23 T. C. 408, affd. 236 F. 2d 159. Both cases

---

[2] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; * * *

[3] SEC. 112. RECOGNITION OF GAIN OR LOSS.

(b) EXCHANGES SOLELY IN KIND.—

* * * * * * *

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange. Where the transferee assumes a liability of a transferor, or where the property of a transferor is transferred subject to a liability, then for the purpose only of determining whether the amount of stock or securities received by each of the transferors is in the proportion required by this paragraph, the amount of such liability (if under subsection (k) it is not to be considered as "other property or money") shall be considered as stock or securities received by such transferor.

[4] SEC. 113 (a). BASIS (UNADJUSTED) OF PROPERTY.—The basis of such property shall be the cost of such property; except that—

* * * * * * *

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

involve the incorporation of a partnership, and in each case the partnership assets were transferred to the new corporation in exchange for stock and notes. The noteholders in each instance were partners in the transferor and were in control of the corporation immediately after the exchange.

In *Estate of Herbert B. Miller, supra,* the new corporation was created with a predominant debt structure (86 to 1 debt-stock ratio) and with no apparent business reason for so low a capitalization. The assets transferred by the partners to the corporation in exchange for the notes there in issue constituted substantially everything the corporation owned. Further, we there expressed doubt as to whether the claims of the noteholders were sufficiently secured so as to be upheld against the claims of general creditors. We held that the transferors had no bona fide intention to create a debtor-creditor relationship with the corporation, that the notes executed by the corporation were in fact representative of risk capital and in the nature of stock, and that since the transaction fell squarely within the provisions of section 112 (b) (5) of the Code, no gain was recognized to the transferors.

In the instant case, however, the petitioners invested assets worth $270,000 in capital stock, whereas the installment sales contract created a corporate obligation in the amount of $605,138.75. Thus, the corporation was adequately capitalized, there being a debt-stock ratio of approximately 2 to 1. The obvious business reason for the execution of the installment sales contract here in question, and the transfer of the rights to the use and possession of a portion of the partnership assets to the corporation pursuant thereto, reserving title in the transferors, was the categorical refusal of Carl Brown to accept the risks attendant upon a further capital investment in the new corporation.

Under Idaho law, the reservation in the transferors of title to personal property sold under an installment sales contract gives the transferor a right to possession and ownership superior to the rights of all other creditors of the transferee. Idaho Code Ann. 1947, sec. 64–801, 802; *Sparkman* v. *Miller-Cahoon Co.,* 282 Pac. 273. The real estate included in the contract of sale remains the property of the partners so long as they retain record title. Idaho Code Ann. 1947, sec. 55–812.

The *Gooding Amusement Co.* case, *supra,* is similarly distinguishable. There, as in *Estate of Herbert B. Miller, supra,* the corporation issued notes to the partnership, rather than execute a contract of sale reserving title in the transferors, as here. Unlike the sales contract here in question, the notes issued to the transferor by the Gooding Amusement Company were subordinated to the claims of other credi-

tors. Moreover, the majority of the notes there issued remained unpaid long after maturity, whereas the record herein discloses that all the installments due during the years in issue on the sales contract executed by the corporation on January 2, 1947, have been paid, with interest thereon. Further, we placed reliance on the failure of the taxpayers in *Gooding Amusement Co.*, *supra*, to show that nontax considerations motivated the decision to accept the short-term judgment notes of the corporation in exchange for a portion of the assets transferred to it. We have described heretofore the independent business purpose underlying the execution of the installment sales contract here in issue. Finally, the ratio of debt to equity financing in the *Gooding Amusement Co.* case was 6.5 to 1, as compared with a 2 to 1 ratio here. We there held that no gain or loss was recognized under the provisions of section 112 (b) (5) of the Code on the ground that the notes received by the transferors in exchange for a portion of the assets transferred to the corporation were in fact evidence of equity capital.

Respondent insists that the corporation here, as in the two foregoing decisions, could not have operated without all of the partnership assets. The record discloses, however, that Carl E. Brown was advised of the possibility of contracting the partnership logging and milling operations, as was the practice among timber operators in central Idaho at that time, and operating the newly formed corporation as a sales and marketing outlet. The assets transferred to the corporation on December 31, 1946, in exchange for stock were sufficient to enable the corporation to conduct a sales and marketing business. The partnership assets which the partners at that time refused to convey to the corporation in exchange for stock were the logging and milling equipment. Thus, by separating the harvesting and processing operations from the marketing activities, the corporation could have continued to operate as a sales outlet without acquiring the assets purchased by it on January 2, 1947.

. For the foregoing reasons, we are of the opinion that neither *Estate of Herbert B. Miller*, *supra*, nor *Gooding Amusement Co.*, *supra*, is controlling of the situation presented here.

Respondent contends that the installment payments and interest received by the partners and treated by them as the proceeds of a sale actually constitute distributions in the nature of dividends. In support of his argument on this point, respondent calls to our attention the fact that no formal dividends had been declared by the corporation although the corporation had earnings and profits during the years in issue. Accordingly, respondent suggests that, inasmuch as each partner received more than $16,000 in payments and interest

from the corporation during each of the years in question, no formal dividend declaration was necessary. The record discloses, however, that the corporation invested substantial amounts in additional equipment and timberland, thereby expanding its activities during the years in question, leaving little or no cash available for the payment of dividends.

The courts have recognized that the consecutive steps involved in the incorporation of a business, occurring in immediate sequence, may nevertheless be entirely different in nature and therefore separate and distinct legal transactions, although closely related in time and purpose. *Sun Properties, Inc.* v. *United States,* 220 F. 2d 171; *Marjory Taylor Hardwick,* 33 B. T. A. 249; *W. A. Hoult,* 23 B. T. A. 804. Such a conclusion is strengthened by the additional fact that the consecutive transactions have separate business purposes. See *W. A. Hoult, supra.*

*Sun Properties, Inc.* v. *United States, supra,* is directly in point here. There, the taxpayer corporation was formed by its sole stockholder on August 25, 1947. On September 1, 1947, the stockholder conveyed 2 lots to the corporation in exchange for 7 shares of stock. On September 15, 1947, the sole owner transferred a warehouse to the taxpayer pursuant to an agreement providing for payment to the transferor of consideration in the amount of approximately $125,000, payable at the rate of $4,000 semiannually, without interest. The purchase price was equal to the fair market value of the warehouse. The payments to be made to the sole stockholder were not dependent upon the earnings of the corporation and the contract, although unsecured, was not subordinated to the claims of general creditors. The United States Court of Appeals for the Fifth Circuit found, on the entire record, that the transaction consummated on September 15, 1947, constituted a bona fide sale by the stockholder to the corporation, rather than a contribution to capital.

The facts apparent from the record before us would seem to require a similar conclusion here. In view of the apparent intention of the parties, the form of contract here in question, the reservation of title in the transferors until the full purchase price is paid, the obvious business considerations motivating the partners to cast the transaction in the adopted form, the substantial investment by the transferors in stock of the corporation, the superior position of the transferors' claims to the claims of the other corporate creditors, the fact that the contract price was equal to the stipulated fair market value of the assets transferred thereunder, the contract provision calling for fixed payments to the partners without regard to corporate earnings, the provision requiring the payment of interest to the transferors at a reasonable rate,

the absence of an agreement not to enforce collection, and the subsequent payment of all installments which became due under the contract during the years in issue, we are persuaded that the transaction which was consummated on January 2, 1947, was a bona fide sale as petitioners contend.

Respondent contends in the alternative that the installment sales contract represents a security under section 112 (b) (5) of the 1939 Code. Securities, as that term is used in section 112 (b) of the Code, have been held to be instruments in the nature of bonds, debentures, or other obligations representing long-term advancements to the issuing corporation. *John W. Harrison*, 24 T. C. 46, affd. 235 F. 2d 587; *Camp Wolters Enterprises, Inc.*, 22 T. C. 737, affd. 230 F. 2d 555; *Wellington Fund, Inc.*, 4 T. C. 185. The question whether an evidence of indebtedness constitutes a security does not depend for its resolution upon a simple determination of the length of time the obligation is to run, but depends rather upon an over-all evaluation of the nature of the debt so as to ascertain whether or not the instrument issued evidences a continuing interest in the affairs of the corporation. *Camp Wolters Enterprises, Inc., supra.* The installment contract in question was not intended to insure the partners a continued participation in the business of the transferee corporation, but was intended rather to effect a termination of such a continuing interest. We are aware of no decision in which an installment sales contract reserving title in the seller has been held to qualify as a security within the meaning of section 112 (b) (5) of the Code, and respondent has cited none. Although in certain particulars the contract may resemble a bond, essentially it partakes of the nature of a contract of sale, and in our view does not constitute a security within the meaning of section 112 (b) (5) of the Code.

In view of the foregoing, we hold that the execution of the installment sales contract on January 2, 1947, was a transaction separate and distinct from the exchange which was consummated on December 31, 1946, and created a valid debtor-creditor relationship between the transferors and the corporation. Consequently, under section 113 (a) of the 1939 Code, the basis for depreciation of the assets acquired by the corporation on January 2, 1947, is the cost of the assets to the corporation, which in this case is equal to the far market value thereof on the date of acquisition.

Our findings of fact as to the useful lives of various items of equipment used by the corporation during the years in issue and our findings with respect to salvage value as to a portion of such equipment dispose of all matters involved in the issue relating to depreciation.

*Decisions will be entered under Rule 50.*