*Decisions will be entered under Rule 50.*

MADISON NEWSPAPERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54790. Filed December 26, 1956.

*James P. Jones, Esq.,* for the petitioner.
*John E. Owens, Esq.,* for the respondent.

TIETJENS, *Judge:* The respondent determined a deficiency of $2,142.41 in income tax for the fiscal year ended September 30, 1950. The petitioner claims an overpayment of $3,280.65. Certain of the respondent's adjustments are not contested. The issues for decision relate to the application of section 459 (c) of the Internal Revenue Code of 1939. They are (1) whether the petitioner is entitled to compute its average base period net income under the provisions of section 459 (c), and (2) if so, is its computation of average base period net income correct?

The returns of the petitioner and its predecessors were filed with the collector of internal revenue at Milwaukee, Wisconsin.

FINDINGS OF FACT.

Wisconsin State Journal Publishing Company and the Capital Times Publishing Company were Wisconsin corporations, each with its principal place of business in Madison, Wisconsin. They were both in operation from a period prior to January 1, 1946, and until November 15, 1948. Prior to November 15, 1948, these corporations occupied separate buildings and each published a newspaper every evening from Monday through Friday and on Sunday morning. These were known, respectively, as The Wisconsin State Journal and The Capital Times. These corporations filed income tax returns for the calendar years 1946 and 1947.

On November 15, 1948, these two corporations consolidated to form a new Wisconsin corporation called Madison Newspapers, Inc., the petitioner herein. The consolidation was effected pursuant to section 181.06 of the Wisconsin Statutes (1947 ed.). The stockholders of the Journal and the Times exchanged all their stock for stock in Madison Newspapers, Inc., which took over all the assets and assumed all the liabilities of the former corporations, and has since had its principal place of business in Madison, Wisconsin.

The petitioner, as agent, filed a corporation income tax return for each of its predecessor corporations for the period January 1, 1948, to November 15, 1948, inclusive. For itself it filed a corporation income tax return for the fiscal period November 1, 1948, to September 30, 1949, and a corporation income and excess profits tax return for the fiscal year ending September 30, 1950.

All the above-described returns were based upon an accrual method of accounting and were filed on or before their respective due dates, or such dates as extended.

After November 15, 1948, steps were taken to enlarge the building theretofore occupied by the Journal. When the enlargement of the building was completed the mechanical, circulation, advertising, and accounting operations of the two newspapers were consolidated in this building. This consolidation was completed in August 1949. The editorial departments were kept separate in order to preserve the editorial independence which the two newspapers had always maintained.

From November 15, 1948, to February 1, 1949, the petitioner published both an evening and a Sunday edition of each newspaper. After February 1, 1949, and through the taxable year involved, the petitioner published an evening newspaper called The Capital Times and a morning and Sunday newspaper called The Wisconsin State Journal.

The issues for decision relate to the computation of the petitioner's average base period net income for the fiscal year ended September 30, 1950, for purposes of subchapter D of chapter 1, Internal Revenue Code of 1939, added by the Excess Profits Tax Act of 1950 (Pub. L. 909, 81st Cong., 2d Sess., approved January 3, 1951). The petitioner's corporation income and excess profits tax return for such year reported an excess profits net income of $213,162.32 and claimed an excess profits credit of $441,515.84 by computing the average base period net income pursuant to section 459 (c). The respondent determined that the petitioner was not entitled to apply section 459 (c) and determined an excess profits credit of $147,178.50.

Subchapter D of chapter 1 of the Internal Revenue Code of 1939 imposed an additional tax for each taxable year ending after June 30, 1950, and before July 1, 1953, upon the adjusted excess profits net income, as defined therein, of corporations. Part I of subchapter D, sections 430 to 459, inclusive, deals with the rates and computation of the tax. Part II, sections 461 to 465, inclusive, deals with the computation of the credit based on income in connection with certain exchanges. Parts III and IV are not here involved. In the computation of adjusted excess profits net income, section 434 allows an excess profits credit computed under section 435 or section 436, whichever results in the lesser tax. The credit under section 435 is based upon average base period net income, the base period being usually the taxable years 1946 through 1949. The credit under section 436 is based upon invested capital. The petitioner elected to use the credit based upon income. Section 435 (c) provides:

For the purposes of this section the average base period net income of the taxpayer shall be the amount determined under subsection (d), subject to the exception that if the taxpayer is entitled to the benefits of subsection (e) of this section, or section 442, 443, 444, 445 or 446, *or any subsection of section 459,* then the average base period net income shall be the amount determined under subsection (d) or (e) or under such section or subsection, whichever results in the lesser tax under this subchapter for the taxable year for which the tax under this subchapter is being computed. [Emphasis supplied.]

Section 435 (d) provides for computation of the average base period net income upon the basis of the general average of the excess profits net income for the base period and section 435 (e) provides for an alternative computation based upon growth. Sections 442, 443, 444, 445, and 446 provide alternative methods of computing average base period net income in certain circumstances. Section 459 which was

added by the Revenue Act of 1951, enacted October 20, 1951, provides further alternative methods available in various other circumstances. A taxpayer is entitled to use the most favorable method applicable in its circumstances.

Part II of subchapter D (secs. 461–465) relates to the privilege accorded "acquiring corporations" to use the base period experience of their predecessors, referred to as "component corporations," if such use would give the acquiring corporation a greater excess profits credit than otherwise. The term "acquiring corporation" includes a corporation resulting from a statutory merger or consolidation of two or more corporations. (Sec. 461 (a) (3) and (4).)[1] The petitioner is an "acquiring corporation" within the definition in section 461 (a) (4). Accordingly, under section 462 (a)[2] its average base period net income may be determined by computing its excess profits net income either with or without reference to section 462 (b). The respondent computed the petitioner's average base period net income by applying section 462 (b), a method which takes into consideration the base period experience of its component corporations.[3]

---

[1] SEC. 461. DEFINITIONS.
   For the purposes of this Part—
   (a) ACQUIRING CORPORATION.—The term "acquiring corporation" means—

   *          *          *          *          *          *          *

   (3) A corporation the result of a statutory merger of two or more corporations; or
   (4) A corporation the result of a statutory consolidation of two or more corporations.
[2] SEC. 462. AVERAGE BASE PERIOD NET INCOME—DETERMINATION.
   (a) IN GENERAL.—In the case of a taxpayer which is an acquiring corporation, for the purposes of the determination of its average base period net income under section 435 (c), its average base period net income determined under section 435 (d) may be determined by computing its excess profits net income either with or without reference to section 462 (b), * * *. The excess profits net income of such acquiring corporation, computed with reference to section 462 (b), shall be the excess profits net income for each month of the acquiring corporation's base period, and for the additional period ending June 30, 1950, increased or decreased, as the case may be, by the addition or reduction resulting from including the excess profits net income for that month of all component corporations in the manner provided in subsection (b).
[3] (b) METHOD OF RECOMPUTATION OF EXCESS PROFITS NET INCOME OF ACQUIRING CORPORATION.—
   (1) The excess profits net income for each month in the base period of the acquiring corporation and for each month in the additional period ending June 30, 1950, shall be determined in the case of the acquiring corporation, and of any component corporation, as provided in section 435 (d) (1) without regard, however, to that part of such section which provides that in no event shall the excess profits net income of any corporation for any month be less than zero.

   *          *          *          *          *          *          *

   (3) For every month of the acquiring corporation's base period and for each month thereafter for the period ending June 30, 1950, there shall be added to the excess profits net income of the acquiring corporation for that month, as determined under paragraphs (1) and (2), the excess profits net income of each component corporation for that month so determined. The excess profits net income of the acquiring corporation for any month, recomputed as provided in the previous sentence, shall, in no event, be less than zero.

Section 459 (c)[4] granted retroactively an alternative method of computing average base period net income to a taxpayer engaged primarily in the newspaper publishing business in its last taxable year ending before July 1, 1950. (The year here involved ended September 30, 1950.) Several conditions must be met if a taxpayer seeks to use this alternative method. As one condition it was necessary that the taxpayer consolidate its mechanical, circulation, advertising, and accounting operations in connection with its newspaper publishing business with such operations of another corporation engaged in the newspaper publishing business in the same area. (Sec. 459 (c) (1).) This provision clearly refers to a physical consolidation of facilities; not a statutory consolidation of corporations.

The petitioner was primarily engaged in the newspaper publishing business in its last taxable year ending before July 1, 1950. It published two newspapers, at first in separate buildings. Between November 15, 1948, and August 1949 (which is after the first half of its base period and prior to July 1, 1950), it physically consolidated in one of these buildings its mechanical, circulation, advertising, and accounting operations in connection with its newspaper publishing business and thereafter published two newspapers using the same operating departments. The respondent says that the petitioner did

---

[4] SEC. 459. MISCELLANEOUS PROVISIONS.

(c) CONSOLIDATION OF NEWSPAPER OPERATIONS.—In the case of a taxpayer engaged primarily in the newspaper publishing business in its last taxable year ending before July 1, 1950, if—

(1) After the close of the first half of the base period of the taxpayer and prior to July 1, 1950, the taxpayer consolidated its mechanical, circulation, advertising, and accounting operations in connection with its newspaper publishing business with such operations of another corporation engaged in the newspaper publishing business in the same area ; and

(2) The taxpayer establishes to the satisfaction of the Secretary that, during the period beginning with the consolidation and ending with the close of the first taxable year beginning after the consolidation, such consolidation resulted in substantial reductions in the amounts which would otherwise have been paid or incurred as expenses in the conduct of the operations described in paragraph (1) ; and either

(3) The total deductions of the taxpayer under section 23, computed without regard to section 23 (s) and (bb), for the first taxable year beginning after such consolidation were not in excess of 80 per centum of the average of such deductions for the two taxable years of the taxpayer next preceding the taxable year in which such operations were consolidated ; or

(4) The excess profits net income of the taxpayer, computed as provided in section 433 (b), for the first taxable year of the taxpayer beginning after such consolidation was 125 per centum or more of the amount determined under section 435 (d) (4) ; the taxpayer's average base period net income determined under this subsection shall be an amount computed under section 435 (d) plus an amount equal to the excess of the average of the amounts paid or incurred as expenses in the conduct of the operations described in paragraph (1) during the two taxable years of the taxpayer next preceding the taxable year in which such operations were consolidated over such amounts paid or incurred during the first taxable year of the taxpayer beginning after such consolidation. In determining such excess amount proper adjustment shall be made for increase in labor costs and newsprint following such consolidation. Proper adjustment shall also be made for any case in which a taxable year referred to in this subsection is a period of less than twelve months. This subsection shall not be applicable to any taxable year of the taxpayer unless the consolidation described in paragraph (1) was continued throughout such taxable year.

not consolidate its operating departments with those of *another corporation* engaged in the newspaper publishing business in the same area; what it did was to consolidate its own two operating departments, that this does not meet the requirements of section 459 (c) (1), and hence the petitioner is not entitled to apply section 459 (c) in computing its average base period net income.

The petitioner contends that since it is an "acquiring corporation" within the definition in section 461 (a) (4), and is entitled to use the base period income experience of its components in the determination of its average base period net income and excess profits credit, it may treat the consolidation of the operating departments acquired from one of its components with the operating departments acquired from the other as a consolidation within the scope of section 459 (c) (1).

While section 462 (b) authorizes inclusion of the base period excess profits income of components in determining average base period net income of an acquiring corporation, this authorization does not apply to the situation before us. The component corporations did not consolidate their operations for they had ceased to do business before the physical consolidation of the operating departments was begun. The petitioner, as the respondent points out, did not consolidate *its* operating departments with those of *another corporation*. The language of the statute is clear and cannot by implication be extended to a consolidation of two departments of the same corporation such as took place here. The petitioner does not meet the requirements of section 459 (c) (1) and is not entitled to compute its average base period net income in accordance with section 459 (c).

The petitioner also refers to remarks of the respondent's counsel at the hearing indicating a view that an acquiring corporation resulting from a merger might qualify as a taxpayer entitled to apply section 459 (c) while an acquiring corporation resulting from a consolidation, such as the petitioner, may not, and contends that such a narrow distinction is hypertechnical in the interpretation of so severe a revenue measure as the excess profits tax act. The petitioner argues that since the Wisconsin statutes make no distinction between mergers and consolidations in their effects no such distinction is warranted in the application of the excess profits tax.

We do not have a merger situation before us and are not called upon to decide whether a continuing corporation following a merger may apply section 459 (c). The remarks of respondent's counsel in this case concerning such a situation are not controlling and do not bar the respondent from litigating such an issue should it arise in another case.

In view of our conclusion it is not necessary to consider whether the petitioner has met the other requirements for qualification or to discuss the computation of the average base period net income

authorized by section 459 (c), nor do we consider it necessary to make the findings of fact incident to such qualification or computation.

In reaching the above conclusion we wish to emphasize that it appears to us that section 459 (c) is not a section of general application. Its provisions are unusually specific and as to its application this Court can neither add to nor subtract from the precise situation to which Congress by the words used meant this special provision to apply.

*Decision will be entered for the respondent.*