THE DAVEY COMPANY (A NEW JERSEY CORPORATION) AND SUBSIDIARY COMPANIES, THE DAVEY COMPANY (A PENNSYLVANIA CORPORATION) AND AURORA PAPERBOARD COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66755. Filed June 18, 1959.

*Benjamin P. DeWitt, Esq.*, and *Sidney Pepper, Esq.*, for the petitioners.

*Arthur Pelikow, Esq.*, for the respondent.

OPINION.

WITHEY, *Judge:* The respondent determined deficiencies in the petitioners' consolidated income tax for the years and in the amounts as follows:

| Year | Amount |
| --- | --- |
| 1950 | $10, 065. 83 |
| 1951 | 11, 820. 60 |
| 1952 | 18, 232. 72 |

The sole issue presented for our decision is the correctness of the respondent's action in determining that the portion of the consolidated average base period net income attributable to petitioner Aurora Paperboard Company may not be computed under the provisions of

section 445 of the Internal Revenue Code of 1939. In the event we determine that Aurora Paperboard Company is not entitled to compute its separate average base period net income pursuant to section 445 of the 1939 Code, an alternative issue presented for our decision is the correctness of the respondent's action in denying it the benefits of section 444 of the Code.

All of the facts have been stipulated and are found accordingly.

Petitioner the Davey Company of New Jersey, sometimes hereinafter referred to as Davey, is a corporation organized under the laws of New Jersey which commenced business in 1923. Petitioner the Davey Company of Pennsylvania is a Pennsylvania corporation organized in 1907 and is a wholly owned subsidiary corporation of the Davey Company of New Jersey. Petitioner Aurora Paperboard Company, sometimes hereinafter referred to as Aurora, was organized on April 16, 1949, under the laws of the State of Illinois. Its authorized capital stock, represented by 1,000 shares of no-par-value stock, was issued to Davey on May 2, 1949, in consideration of $1,000. Aurora is a wholly owned subsidiary of Davey. Each of the petitioners is engaged in the manufacture and sale of paperboard.

The petitioners collectively filed consolidated income and excess profits tax returns for 1950, 1951, and 1952 with the director of internal revenue at Newark, New Jersey. Aurora elected to compute its separate average base period net income for 1950, 1951, and 1952 under the provisions of section 445(b) of the 1939 Code. On February 1, 1956, the petitioners filed amended consolidated excess profits tax returns for 1950, 1951, and 1952 with the director at Newark, New Jersey.

In May 1949, Davey loaned $111,000 to Aurora which was evidenced by non-interest-bearing notes. On May 5, 1949, Aurora acquired for cash and notes certain assets and manufacturing facilities of the Consolidated Paper Company to be used in the manufacture of paperboard. Aurora commenced operations immediately thereafter. Consolidated Paper Company is unrelated to any of the petitioners.

Section 445 of the 1939 Code[1] provides an alternative method for the computation of the average base period net income of a new cor-

---

[1] SEC. 445. AVERAGE BASE PERIOD NET INCOME—NEW CORPORATION.

(a) NEW CORPORATION.—A taxpayer which commenced business after the first day of its base period shall, except as provided in subsection (g), be considered a new corporation for the purposes of this section, and its average base period net income determined under this section shall be the amount computed under subsection (b).

[Subsec. (a) as added by sec. 101, Excess Profits Tax Act of 1950. As so added, subsec. (a) is effective with respect to taxable years ending after June 30, 1950.]

(b) AVERAGE BASE PERIOD NET INCOME.—The average base period net income of a new corporation determined under this section shall be computed as follows :

(1) For the purpose of determining the excess profits credit for any of the taxpayer's first three taxable years which is a taxable year under this subchapter—

(A) By multiplying the amount of the total assets for such taxable year (determined under subsection (c)), held by the taxpayer in good faith for the purposes of the busi-

poration. Subsection (b) of that section provides for the computation of the credit by the determination of a hypothetical average base period net income based on an industry rate of return (determined as provided in section 447) applied to the total assets of the new corporation. Section 445(a) of the Code defines a new corporation as one which commenced business after the first day of its base period. Section 435(b) defines the term "base period" as the period beginning

---

ness, by the base period rate of return, proclaimed by the Secretary under section 447, for the taxpayer's industry classification.

(B) By subtracting from the amount ascertained under subparagraph (A) the total interest paid or incurred by the taxpayer for the 12 months ending with the last day of such taxable year.

(2) For the purpose of determining the excess profits credit for any taxable year under this subchapter other than a taxable year described in paragraph (1)—

(A) By multiplying the amount of the taxpayer's total assets (as defined in section 442(f)) for (i) the last day of its taxable year immediately preceding its first taxable year under this subchapter, or (ii) the last day of its third taxable year, whichever day is later, by the base period rate of return, proclaimed by the Secretary under section 447, for the taxpayer's industry classification.

(B) By subtracting from the amount ascertained under subparagraph (A) the total interest paid or incurred by the taxpayer for the 12 months ending with whichever day is used under such subparagraph.

For the purposes of this section, the taxable year of the taxpayer in which it commenced business and its two succeeding taxable years shall be considered to be its first three taxable years.

[Subsec. (b) as added by sec. 101, Excess Profits Tax Act 1950. As so added, subsec. (b) is effective with respect to taxable years ending after June 30, 1950.]

\*       \*       \*       \*       \*       \*       \*

(g) INELIGIBLE CORPORATIONS.—

(1) If a taxpayer, on or after December 1, 1950, and prior to the end of its third taxable year, acquires any properties in any of the transactions described in paragraph (2), it shall not, for the taxable year in which such acquisition occurs or for succeeding taxable years, be entitled to the benefits of this section except under the circumstances and subject to the limitations provided in section 462(g).

(2) The transactions to which paragraph (1) applies are as follows:

(A) The acquisition by the taxpayer from another corporation of properties the basis of which in its hands is determined by reference to the basis of such properties to the transferor;

(B) The acquisition by the taxpayer of a substantial part of its assets from another corporation, or of a substantial part of the properties of another corporation, if 50 per centum or more in value of the outstanding stock or outstanding voting stock of the taxpayer is directly or indirectly owned, at the time of such acquisition, by individuals owning directly or indirectly 50 per centum or more in value of the outstanding stock, or outstanding voting stock of the transferor;

(C) The acquisition by the taxpayer of a substantial part of the properties distributed on or after December 1, 1950, by another corporation, if such properties constituted a substantial part of the business assets of such other corporation, and if 50 per centum or more in value of the outstanding stock or outstanding voting stock of the taxpayer is owned directly or indirectly by individuals who at the time of such distribution owned directly or indirectly 50 per centum or more in value of the outstanding stock or outstanding voting stock of such other corporation;

(3) For the purposes of this subsection, the provisions of section 503 shall be applicable in the determination of ownership of stock.

[Subsec. (g) as added by sec. 101, Excess Profits Tax Act 1950. As so added, subsec. (g) is effective with respect to taxable years ending after June 30, 1950.]

(h) CROSS REFERENCES.—

(1) For definition of gross receipts, see section 435(e)(5).

(2) For computation of excess profits credit based on income in the case of certain reorganizations, see Part II of this subchapter.

[Subsec. (h) as added by sec. 101, Excess Profits Tax Act 1950.]

January 1, 1946, and ending December 31, 1949, with certain exceptions not here applicable.

Since Aurora was organized April 16, 1949, acquired its operating equipment and other assets on May 5, 1949, and commenced business at that time, it comes within the express provisions of section 445(a).

The respondent concedes that the exception stated in subsection (g) of section 445 (the sole exception provided in that section) is not applicable to Aurora. The respondent contends, however, that section 461 of the 1939 Code,[2] which makes provision for "acquiring" and "component" corporations, impliedly constitutes a further exception to section 445. The respondent further contends that section 461 is applicable to the facts here presented; that under the provisions of section 461(a)(1)(E) Aurora is an "acquiring corporation" because of the receipt of $1,000 in cash paid to it by Davey and, consequently, that under section 461(d)[3] Aurora must be considered to have commenced business in 1923 on the date on which its parent (Davey) commenced business.

After carefully reviewing the foregoing provisions of the 1939 Code, together with the legislative history of their enactment, we are unable to accept the proposition that Congress intended section 461 to limit the eligibility under section 445 of corporate taxpayers otherwise qualified under that section. Section 445(a), which defines a new corporation, contains no reference to section 461. The sole exception to the operation of section 445(a) is expressly provided by subsection (g) which concededly is not applicable here. Section 461 expressly limits

---

[2] SEC. 461. DEFINITIONS.

For the purposes of this Part—

(a) ACQUIRING CORPORATION.—The term "acquiring corporation" means—

(1) A corporation which has acquired—

(A) substantially all the properties of another corporation and the whole or a part of the consideration for the transfer of such properties is the transfer to such other corporation of all the stock of all classes (except qualifying shares) of the corporation which has acquired such properties, or

(B) substantially all the properties of another corporation and the sole consideration for the transfer of such properties is the transfer to such other corporation of voting stock of the corporation which has acquired such properties, or

(C) before December 1, 1950, properties of another corporation solely as paid-in surplus or a contribution to capital in respect of voting stock owned by such other corporation, or

(D) substantially all the properties of a partnership in an exchange to which section 112(b)(5), or so much of section 112(c) or (e) as refers to section 112(b)(5) is applicable.

(E) properties either from one or more corporations or from one or more partnerships or from one or more corporations and one or more partnerships, other than from a corporation exempt under section 101, in an exchange, not otherwise described in this subsection, to which section 112(b)(4) or (5), or so much of section 112(c) or (e) as refers to section 112(b)(4) or (5) is applicable.

[3] SEC. 461(d). For purposes of sections 435(e), 442, 443, 444, 445, and 446, any taxpayer which is an acquiring corporation shall be considered to have been in existence and to have had taxable years for any period during which it or any of its component corporations was in existence, and such corporation shall be considered to have commenced business on the earliest date on which it or any of its component corporations commenced business. * * *

the application of the definitions contained therein to "the purposes of this Part," i.e., Part II of the Excess Profits Tax Act of 1950, and therefore is not intended to apply to Part I of the Act.

Part II of the Excess Profits Tax Act of 1950 clearly represents an elective or optional provision, extending to an acquiring corporation the privilege of utilizing the base period experience of its predecessor of such use would result in a greater excess profits tax credit than otherwise would be available to the acquiring corporation. *Madison Newspapers, Inc.*, 27 T.C. 618, affd. 253 F. 2d 129. We are unable to find in the text of section 461 or in its legislative history any indication that its use is intended to be mandatory. The respondent's reliance on section 461 therefore is clearly misplaced.

However, even if reference to section 461 were required by the Code in determining the eligibility of a new corporation under section 445, the provisions of section 461 in our view would not be applicable to the facts here presented because Aurora does not represent an "acquiring" corporation within the meaning of those provisions. The receipt by Aurora of $1,000 cash from Davey in exchange for the issuance to Davey of its capital stock does not in our opinion constitute the acquisition of "properties * * * from one or more corporations" within the meaning of section 461 (a) (1) (E) of the 1939 Code as the respondent maintains.

The congressional committee reports accompanying the enactment of section 461 make it abundantly clear that it was intended to apply only to a corporation standing in the place of its predecessor pursuant to a reorganization involving the transfer to it of properties from a sole proprietor, partnership, or another corporation, in whose hands those assets had a base period experience. S. Rept. No. 2679, 81st Cong., 2d Sess. (1950), p. 37; H. Rept. No. 3142, 81st Cong., 2d Sess. (1950), pp. 63, 64. The respondent's regulations express a similar view. Regs. 130, sec. 40.461–2(b).

The report of the House Ways and Means Committee accompanying the enactment of the Excess Profits Tax Act of 1950 states as follows with respect to an "acquiring corporation" under section 461:

Since all part II transactions involve a sufficient continuity of interest to justify treating the acquiring corporation as standing in the place of its predecessors, such transactions must satisfy the requirements of section 112 with respect to such transactions in order that the transferee corporation may be treated as an acquiring corporation. [H. Rept. No. 3142, at p. 64.]

In the instant case, the record does not demonstrate that Aurora acquired a substantial part of the operating assets of Davey or carried on the business which Davey previously conducted. Aurora simply sold Davey its capital stock for $1,000 and acquired the assets and business of Consolidated Paper Company, a business totally unrelated to any of the affiliated petitioners. The indications here are that, after

the organization of Aurora by its parent, Davey, in May 1949, each of the two corporations conducted independent business operations.

Although it is true, as the respondent points out, that a transfer of cash among other assets to a new corporation does not prevent a tax-free exchange within the meaning of section 112(b)(5) of the 1939 Code (*George M. Holstein, III*, 23 T.C. 923; *American Bantam Car Co.*, 11 T.C. 397, affd. 177 F. 2d 513, certiorari denied 339 U.S. 920; *Cyrus S. Eaton*, 37 B.T.A. 715), we do not understand that a simple purchase of stock in a newly formed corporation solely for cash is the type of transaction envisioned by Congress in the enactment of section 461 of the Code. In such a situation, it is difficult to conceive how the earning experience of a parent corporation (Davey) which contributed only a small amount of cash to the new corporation (Aurora) would have any significance. Consequently, we cannot hold that Aurora constitutes an acquiring corporation within the intendment of section 461.

A final observation which seems fatal to the position taken by the respondent is the fact that a new corporation eligible to receive the benefits of section 445 could not arise if his position is correct, for the acquisition of capital by a newly formed corporation would, under the respondent's theory, automatically disqualify it as a "new corporation" under section 445(a), by virtue of section 461. Congress assuredly did not intend section 461 to be construed so as to nullify the unambiguous provisions of section 445(a).

For the foregoing reasons, we hold that Aurora Paperboard Company is a "new corporation" within the meaning of section 445 of the 1939 Code and is therefore entitled to compute its separate average base period net income under the provisions of that section.

*Decision will be entered under Rule 50.*